Argued March 13; affirmed April 15, 1930

DANIELS *v.* RIVERVIEW DAIRY

(287 P. 77)

*Robert F. Maguire* of Portland (Winter & Maguire of Portland on the brief) for appellant.

*Paul R. Harris* of Portland (Davis & Harris and Joseph Van Hoomissen, all of Portland, on the brief) for respondent.

BELT, J. This is an action to recover damanges for injuries to person and property resulting from a collision between a motorcycle and an auto truck at the intersection of East Morrison and 35th streets, in the city of Portland. In view of the assignments of error, it is not necessary to make a statement of the facts surrounding the occurrence. From a judgment for $1,525 in favor of plaintiff, the defendant appeals.

Defendant asserts that it was error to permit Dr. Saari, a physician who examined the plaintiff, not for the purpose of treatment but to qualify as a witness, to testify as to the history of the case as a basis for his opinion concerning the extent of the alleged injuries. Counsel contends that it was improper for the physician, as an expert witness, to relate what the injured party said to him relative to the history of the case to enable him to make a diagnosis, and that his testimony must be confined to objective symptoms.

■ In view of the record, we are of the opinion that the question is not before the court.

"Q. What injuries did he have at that time, doctor?

"A. The boy came in for a complete examination on March 23d. At that time he complained of suffering with severe backache, dizziness, unable to concentrate, nervousness and weakness. He gave a history—the history prior to the date he came to the office, as far as birth and so on—was absolutely negative, outside of the fact that he had influenza at the age of 6; no complications, and at 16 and 17 he had a mild attack of tonsilitis, and inquiring as to the history of the backache and dizziness, he states that he was in an accident or collision on September 4. Up to the time of the injury, he was normal in development and physical condition. He claims that he was going south on 35th street, and the milk truck—

"Mr. Maguire: Well, just a minute.

"Q. (By Mr. Davis) Not what he told you, except the injuries.

"A. This was just part of the history.

"Q. Yes; just as to the injuries, give that history.

"A. On 35th and Washington he was hit by a truck, and he was dragged 30 feet.

"Mr. Maguire: Well, you can not unring the bell.

"A. He hit the pavement, was dazed; had temporary loss of consciousness; didn't seem to know what happened. The ambulance took him to St. Vincent's

hospital and he had a headache, dizziness, nausea, no vomiting, and he had a lacerated wound in the back of the left leg; cut right knee cap, bruise left leg to ankle, and there was a burn on the back of the left hand. I went into details about the care at the hospital.

      *      *      *      *      *

"Mr. Maguire: Oh, I submit, Your Honor—May I ask a question or two?

"Mr. Davis: No objections; go ahead.

"Q. (By Mr. Maguire) This examination was made for the purpose of testifying in this case?

"A. Yes. He told me his mother sent him for a complete physical examination. I knew nothing of the purpose.

      *      *      *      *      *

"Mr. Maguire: I submit, Your Honor, this history is improper, and the jury should be instructed to disregard it. It is purely a self-serving declaration, not made in the course of general treatment, and the statements of the surgeon, the testimony of surgeons which is based in fact upon subjective symptoms, made for the purpose of testifying, not for the purpose of treatment, and not in the course of treatment—it is absolutely incompetent."

      *      *      *      *      *

"Q. (By Mr. Davis) Tell the jury, please, what you found him suffering from, if anything?

"Mr. Maguire: Just a minute; that is the point of my objection.

"Mr. Davis: Well, at this time he had a right to examine him and tell what was the matter with him.

"Mr. Maguire: The purpose of holding that where a doctor is obliged—just a minute; one more question.

"Q. (By Mr. Maguire) Doctor, any diagnosis which you made of him is based partly upon what is known as subjective symptoms?

"A. We always take into consideration—

"Q. Just answer the question.

"A. Yes. Subjective symptoms and objective findings.

"Mr. Maguire: My objection is, this doctor's testimony is not competent when it is based in part upon subjective symptoms, not made in the course of treatment, and no treatment followed it.

\*　　　\*　　　\*　　　\*　　　\*

"Q. (By Mr. Maguire) Did you make any other— prescribe any course of treatment and see how he responded to any course of treatment?

"A. He did not come to me for the purpose of treatment at all; just a diagnosis; I never treated him.

"Mr. Maguire: I submit the doctor is incompetent, Your Honor.

"Mr. Davis: Let me ask the doctor a question now.

"Q. (By Mr. Davis) Doctor, did you find anything the matter with this boy when you examined him, that you could tell, of your own examination?

"A. My diagnosis was the lower back injury— sacro-iliac disturbance.

"Mr. Maguire: Well, just a minute.

"Q. (By Mr. Davis) Could you tell that from your own observation and examination?

"A. You could tell that without any history.

"Mr. Davis: Well, I submit, Your Honor, that the doctor has a right to testify to that.

"The Court: What is his testimony, now, that you want stricken out?

"Mr. Maguire: I submit, Your Honor, the doctor told me a moment ago that he couldn't testify to this man's condition without taking into consideration his history.

"The Court: Well, do you mean by that, that, for instance, if he had a scar on him, if he tells him how he got the scar, he cannot testify to—

"Mr. Maguire: He can testify what the scar is, what it shows.

"The Court: As to the extent of the injury?

"Mr. Maguire: Only what he sees.

\*　　　\*　　　\*　　　\*　　　\*

"Q. (By Mr. Davis) Doctor, just explain to the jury, if you will, what injuries, if any, you saw, or any marks or evidence of injury that this boy had.

"A. May I refer to the history, the physical findings here? I can't remember all those.

"Q. Yes, there is no objection to that.

"The Court: But you will have to confine it, doctor, to what you found from your examination, without the aid of any oral explanation by the patient."

It will be observed from this rather extended colloquy between counsel—only a portion of which has been set forth—that there was no specific objection or motion made by counsel for appellant which required a ruling of the court. Unquestionably certain portions of the doctor's testimony should have been stricken, but when the court inquired of counsel: "What is his testimony, now, that you want stricken out?" there was no response. True, at one stage of the proceedings, counsel requested that the jury be instructed to disregard the testimony of Dr. Saari, but it is impossible to ascertain from the record what part of his testimony he referred to. Certainly the doctor was competent to testify as an expert. It is clear, under any theory of the law, that part of his testimony was admissible. It would seem that, in this "running fight" between counsel, the specific question which is now being urged before the court was lost in the smoke of battle. Assuming that this assignment of error is properly before us for consideration, it might well be determined adversely to appellant on the authority of *Reid v. Yellow Cab Co.,* 131 Or. 27 (279 P. 635).

■ Error is assigned because of failure of the court to give the following requested instruction:

"I instruct you that if you find that the motorcycle which plaintiff was operating without fault or negli-

gence on the part of the defendant suddenly and unexpectedly appeared immediately in front of the truck of the defendant at a place where it had no legal right to be, then I instruct you that the accident was unavoidable one as far as the defendant is concerned *and that the rate of speed of the truck would be immaterial* for upon such an appearance no precaution could have prevented the accident.''

The above instruction was given with the exception of the words italicized. The instruction, as requested, was based upon one approved by this court in *Archer v. Gage,* 126 Or. 532 (270 P. 521), and, by reason thereof, defendant urges it was error thus to modify it. A casual examination of that case discloses no similarity in facts to the one at bar. In *Archer v. Gage,* supra, it was the contention of the defendant that a child four and one-half years of age darted out in front of an auto bus which had left the main highway for the purpose of turning around. We are not concerned with a ''darting out case.'' Here the motorcycle was being driven in the street and was in plain view at time of collision. The instruction given by the court was indeed favorable to the defendant. What has been said also disposes of the assignment of error relative to refusal to give requested instruction No. 9 which is similar to the one above considered.

■ No error was committed in refusing to give the following requested instruction:

''I instruct you that if you shall find from the evidence that one or more of the brakes on defendant's truck failed to hold said truck by reason of the fact that water was present therein causing said brake linings to soften temporarily, that such a condition does not constitute defective brakes and you should therefore disregard any claim of defective brakes by reason of the

bands having become dampened unless you find that the defendant had or should have had notice of such condition.''

■ The court very properly instructed in the language of the statute:

"* * * that every motor vehicle * * * shall be provided with two sets of brakes operating independently, sufficient to control the vehicle at all times. You are instructed that any violation of this law would be negligence in itself.''

We see no misconduct of counsel for plaintiff which would warrant a reversal. The court instructed the jury to disregard the objectionable remarks of counsel but if, as defendant contends, ''it is impossible to unring a bell,'' we are of the opinion that the matter referred to was not prejudicial.

Finding no reversible error, it follows that the judgment of the lower court is affirmed.

COSHOW, C. J., BEAN and BROWN, JJ., concur.