Argued March 6; affirmed July 2, 1946

## LAVIGNE *v.* PORTLAND TRACTION CO.

(170 P. (2d) 709)

*John F. Conway,* of Portland (with Henry G. Kreis, of Portland, on brief), for appellant.

*John J. Coughlin,* of Portland (with Griffith, Peck, Phillips & Nelson, of Portland, on brief), for respondent.

Before BELT, Chief Justice, and ROSSMAN, KELLY, BAILEY, LUSK and BRAND, Justices.

LUSK, J.

This appeal is taken by the plaintiff from a judgment of involuntary nonsuit in an action to recover damages for personal injuries based on negligence. Two other cases arising out of the same accident have been passed on by this court. *Holzhauser v. Portland Traction Co.*, 178 Or. 607, 169 P. (2d) 127; *LaVigne v. LaVigne*, 176 Or. 634, 158 P. (2d) 557. Neither of those decisions controls the judgment in this case.

Plaintiff, while a guest passenger in an automobile driven by his nephew, William L. LaVigne, was injured when the automobile collided with a trolley bus of the defendant corporation.

According to the complaint the LaVigne automobile was being driven in a northwesterly direction along North Greeley Avenue in the City of Portland, and was a short distance from the intersection of that thoroughfare with North Alberta Street "when a large trackless trolley bus, then owned and operated by said defendant, and which was then traveling in a general southeasterly direction along and upon said North Greeley Street, and then on its wrong side of said street and in its wrong lane of traffic, did thereupon collide with * * * said automobile * * * "

Plaintiff alleged that defendant was negligent in operating its trolley bus on the wrong side of North Greeley Avenue and in the wrong lane of traffic thereof; in failing to keep the bus under proper control; and in operating the bus at a high and dangerous rate of speed.

The accident occurred on the afternoon of January 18, 1943. The plaintiff, as a witness, testified that he was in the back seat of the LaVigne automobile; his brother was also in the back seat; and his brother's wife was in the front seat with her son, William La-Vigne, who was driving. The speed of the car was not over twenty-five miles an hour. The witness did not see the trolley bus and had no recollection of the accident, in which he sustained serious injuries.

The only other witness for the plaintiff (apart from those who testified on the subject of his injuries) was Carl E. Anderson, the operator of the trolley bus. The substance of his testimony was that on the afternoon in question he was operating the bus south on North Greeley Avenue at a speed of about twenty miles an hour. North Greeley Avenue is twenty-eight feet wide. The day was clear and dry. As he neared North Alberta Street he saw a string of cars approaching from the south with the LaVigne car in the lead. When the LaVigne car was about 100 or 120 feet from the bus it swung to its left to within two feet of the west side of North Greeley Avenue, whereupon the witness applied the brakes of the bus and pulled over to his own left into the east half of the highway. But the LaVigne car then swung back to its right, and, without slackening its speed, came towards the bus at an angle of forty-five degrees and ran into the bus at its left front. Immediately after the collision the bus was about forty feet north of Alberta Street.

The plaintiff contends that the bus operator should have avoided the collision because, it is claimed, the evidence shows that he saw the LaVigne car start to cross the yellow line, which marks the center of the street, when the car was several blocks away from the

bus. That is to say, as we understand the argument, the LaVigne car, instead of being 100 to 120 feet distant when it swung to the left, as Anderson testified, was actually several hundred feet away from the bus, leaving ample time for Anderson to bring the bus to a stop. To support this contention, the following testimony of the witness Anderson with reference to testimony previously given·by him at the trial of another case arising out of the same accident is called to our attention:

"Q Did you at the time of this trial testify to this effect (reading):

\* \* \*

'Q Mr. Anderson, was the LaVigne car across the center line when you first noticed it?

'A Well, no, not quite.

'Q It was just starting to cross?

'A Starting.

'Q You mentioned the fact that the trolley poles on the bus gave you a range of twenty-eight feet on both sides, so it would be fourteen feet on each side?

'A Yes, sir.'

"Now, what is your best recollection of where the LaVigne car was with respect to the center line when you first noticed it coming around the curve there?

"MR. NELSON: That is already testified to. He has already testified to that.

"MR. SIMS: Q Did you testify in the former trial that it was starting across the center line? Did you testify to that in the former trial?

"A I don't remember that.

"Q I will show you this (counsel approaching the witness). There is the question and there is your answer (reading): 'It was just starting to

cross? Answer: Starting.' That is what you testified to on that trial?

"A Something like that. I seen them way down the street when I first seen them."

The witness having elsewhere testified on the trial of the instant case that he first saw the LaVigne car when it was several blocks away, it is contended that the foregoing testimony constitutes evidence that he saw the LaVigne car swerve to its left at that time. Assuming, what we think is not the fact, that Anderson intended by his previous testimony to convey the meaning ascribed to it by counsel for the plaintiff, he gave no such testimony in this case. He was asked, referring to the quoted testimony from the previous trial, if that is what he testified to "on that trial", and he answered, "Something like that", and added, "I seen them way down the street when I first seen them"; but there the matter was allowed to drop. He was not asked whether the fact was as stated in his previous testimony, and he did not so swear. His answer was not substantive evidence. At most, it amounted to no more than impeachment. The only substantive evidence in the record as to the relative positions of the two vehicles immediately preceding the accident is Anderson's testimony that the LaVigne car was 100 to 120 feet distant from the bus when it swung over to the left-hand side of the highway.

As a part of this contention our attention is further called to the following testimony given by Anderson in a pre-trial deposition:

"Q All right. A string of cars coming towards you about twenty-five feet apart. Do you think that would be a pretty fair average distance apart?

"A It should be.

"Q About how many cars were in that string, just approximately?

"A I don't know. They strung around and out of sight. I imagine there were more down around the bend just below.

"Q In other words, you would say quite a long string?

"A Maybe six, seven or eight in the string, at least, that I could see.

"Q You could see, then, six or eight cars in the string, and then you say they went around the bend?

"A Kind of an S-shape, you know."

The witness testified that he remembered giving the foregoing testimony and said that the "string of cars" to which he had referred "were on both sides of the street". He was then asked, "About eight blocks away, would you say?", and answered, "Sometimes I look miles ahead if I have to". Later he testified that he first noticed the string of cars with the LaVigne car in the lead when the LaVigne car was between North Wygant and North Blandena streets. The bus was then between North Sumner and North Webster streets. That would place the two vehicles about four blocks apart. But the witness did not testify, and there is no inference to be drawn from his testimony, that the LaVigne car was at that time on the wrong side of the street or that it swerved to its left at that time.

In a word, there is no evidence in the case that the LaVigne car crossed the yellow line before it came to a point 100 to 120 feet from the bus.

There is no evidence that the bus was not under control, and there is nothing in the circumstances to suggest that the speed of about twenty miles an hour to which Anderson testified was excessive.

Anderson testified that he could stop his bus in about a length and a half, or forty-five feet, and that he did so on this occasion. It is argued that, with his ability to stop in that distance, if he had remained on his own side of the street no collision would have occurred. Possibly that is true, but he had no reason to assume that the LaVigne car which he was trying to escape would again change its course and pursue him to the east side of the street.

■ We are of the opinion that Anderson acted as any reasonably careful person or any prudent bus operator, mindful of the safety of himself and his passengers and of the occupants of the LaVigne car, would and should have acted in like circumstances. He was suddenly faced with danger from an automobile, obviously out of control and coming toward him on its wrong side of the street. The combined speeds of the two vehicles was forty-five miles an hour, which is sixty-seven and a half feet per second. To maintain his course on the highway would have been apparently to court disaster. He could not go over to his right on the west side of Greeley Avenue because there the pavement was bordered by a two foot ditch and a high embankment. He took the only avenue of escape open, and there would have been no accident but for the unforeseeable action of the LaVigne car, which suddenly changed its course, went back to the side of the road from which it had come, and, without slackening its speed, collided with the bus.

■ It seems hardly necessary to add that the statute (§ 115-327, O. C. L. A.), which requires the operation of vehicles on the right-hand side of the highway, has no application in the circumstances of this case. See *Weinstein v. Wheeler,* 135 Or. 518, 529, 295 P. 196, 296 P. 1079.

▉▉ Plaintiff further contends that the order allowing the motion for an involuntary nonsuit was erroneous because the motion was made after the defendant had introduced a map in evidence. It seems to be thought that the court had then lost its power to make the the order. We find nothing in the statute which supports this contention (§ 6-201, O. C. L. A., as amended by Ch. 313, Oregon Laws 1941), and in any event, since, in the words of the statute, "the plaintiff failed to prove a cause sufficient to be submitted to the jury", the allowance of the motion, instead of ordering a directed verdict, did not prejudice him. *Fredenthal v. Brown*, 52 Or. 33, 41, 42, 95 P. 1114.

In our opinion there is no evidence in this case of negligence on the part of the defendant, and the judgment of involuntary nonsuit is, therefore, affirmed.