Argued December 5, 1957, reversed and remanded January 8, 1958

# NETTLETON *v.* JAMES ET AL
### 319 P. 2d 879

*C. X. Bollenback,* argued the cause for appellant.

*W. A. Johansen* argued the cause for respondents. On the brief were McKeown, Newhouse & Johansen, Coos Bay.

Before Lusk, Presiding Justice, and Warner and Kester, Justices.

LUSK, J.

This is an appeal by the plaintiff from an adverse judgment in an action to recover damages for personal injuries sustained by plaintiff when the automobile he was operating was struck from the rear by a logging truck driven by the defendant, A. L. James. The truck belonged to James and was leased by him to the other two defendants. James was their employee, and admittedly was engaged in the course of his employment at the time of the accident.

The assignments of error raise questions of the proper application of the Oregon statutes relating to the sufficiency of brakes on automobiles.

The facts are virtually free from dispute. On July 27, 1954, the plaintiff, who was driving from

Coos Bay to Coquille, brought his car to a stop in obedience to a signal of a flag woman who was a member of a highway construction crew. Defendant James was following the plaintiff driving a log truck. James saw the plaintiff's car coming to a stop and saw his stop signal, and endeavored to stop also, but his brakes failed and as a result the truck crashed into the rear of plaintiff's car causing the injuries complained of. The accident occurred early in the afternoon of a clear day. The pavement was dry and the highway free of obstacles.

The evidence relating to the condition of the truck's brakes was given by the defendant James as an adverse witness for the plaintiff. He had started out that morning from Gold Beach with a load of lumber for delivery at Central Dock north of Coos Bay. The lumber was carried in a trailer hauled by the truck. After the lumber had been unloaded at the dock he disconnected the trailer, which was then hoisted onto the bed of the truck. The foot brakes on the truck were air operated. When the trailer was coupled with the truck two hoses, one on either side, connected the truck and trailer through which compressed air, stored in two tanks on the truck, could be released to actuate the brakes on the trailer. Underneath the bed of the truck near the rear were two valves, one on either side. The one on the right is the "hot line," and its purpose is "to shoot the air back to the trailer." The one on the left is known as the exhaust valve, and both valves must be kept open when the trailer is being hauled by the truck in order for the trailer brakes to operate. When the trailer is disconnected from the truck it is necessary, before uncoupling the hoses, to close both valves, which is done by turning a handle 90 degrees in a horizontal plane. If the valves

are not closed the air escapes and all braking power is lost. It takes considerable pressure to open and shut the valves.

James testified that before disconnecting the trailer he closed both valves. The trailer then having been loaded onto the truck, he set out on his return journey to Gold Beach. He used the foot brakes coming down a long grade when he was about two miles north of the scene of the accident. The plaintiff's car passed him about a mile or a mile and a half south of Coos Bay, and he was in sight of it most of the time until the accident occurred. He was following the plaintiff's car at a distance of about 500 or 600 feet and traveling at a speed of 25 miles an hour when he saw the plaintiff's stop lights come on and saw him signal for a stop with his arm. He immediately applied the foot pedal, slowly at first, but the truck did not slow down. He put the pedal clear to the floor, and found that he had no brakes. He then grabbed the emergency brake, and "the air buzzer started buzzing." The air buzzer cuts in for a warning when air pressure drops below 60. He swerved his truck to the left, but saw a log truck approaching, and, to avoid colliding with it, turned back to the right, intending to go off the embankment on the right-hand side, but he was then too close to the plaintiff's car, which had come to a complete stop, to avoid hitting it. James testified that he was within 100 feet of the plaintiff's car when he grabbed the emergency brake and the air buzzer sounded, and he then realized that he had no brakes. After the accident he discovered that the exhaust valve was open.

Regarding the emergency brake, James testified that "it has a disk on the main drive line," and "you pull that on and it squeezes the shoe against this disk";

that it does not actuate the shoes against the brake drums but works only on the drive line. When he used the hand brake it seemed to slow the truck down a little, but it did not lock the wheels nor stop the truck.

James further testified that, if the valves are not closed preparatory to uncoupling the hoses when the trailer is to be disconnected, one would hear a blast of air escaping, and on this occasion nothing of the kind occurred, and that "when they lifted the trailer up and I backed under the trailer I had to set my brakes, and if that valve had been open at that time I would have lost air then also" and "would have heard the air escape."

A police officer, who examined the truck immediately after the accident and discovered the open valve, testified that he had discussed it with James and that "the exact responsibility of placing who had left that valve open, Mr. James was unable to tell me as to that."

There are two assignments of error which call for our consideration. They are based on the court's failure to give the following instructions requested by the plaintiff:

"I instruct you that the laws of the State of Oregon concerning the brakes on a motor vehicle which I have just mentioned are absolute, that is, the law does not make any exceptions or allow any excuses."

"The defendants in this case have admitted that the truck involved in this collision did not have effective brakes at the time of the collision; under these circumstances the defendants were guilty of negligence by reason of that fact alone; under these circumstances the sole questions for your consideration are whether such negligence was the proximate cause of the injuries, if any, that the plaintiff sustained, and if you find he did so sustain injuries,

then you shall turn to the consideration of the question of damages."

The court instructed the jury that "if you find from the evidence that the defendants violated any of the provisions of the statute to which I will call your attention, such violation, if any, would be negligence," and gave to the jury the substance of ORS 483.444, which contains the requirements for brakes on motor vehicles. The court also instructed on unavoidable accident, advising the jury that the question of unavoidable accident raises no new issue but means merely an accident that happens without negligence on the part of any person, and that if the defendant James was not guilty of negligence in one or more of the particulars charged, "then, of course, the defendants would be entitled to your verdict whether or not it was an unavoidable accident." The court also submitted to the jury the question of whether, if the defendant James was found to be negligent, such negligence was the proximate cause of plaintiff's injuries.

There was no question of contributory negligence in the case.

ORS 483.444 provides in part:

"(1) Every motor vehicle other than a motorcycle when operated upon a highway shall be equipped with brakes adequate to control the movement of and to stop and to hold such vehicle, including two separate means of applying the brakes, each of which means shall be effective to apply the brakes to at least two wheels. If these two separate means of applying the brakes are connected in any way, they shall be so constructed that failure of any one part of the operating mechanism shall not leave the motor vehicle without brakes on at least two wheels.

"(2) Any combination of motor vehicle, trailer,

semitrailer or other vehicle shall be equipped with brakes upon one or more of such vehicles adequate to stop such combination of vehicles within the distance specified for motor vehicles under the regulations set forth in subsection (5) of this section.

"\* \* \* \* \*

"(4) All brakes shall be maintained in good working order and shall conform to the regulations set forth in subsection (5) of this section.

"\* \* \* \* \*"

It is apparent from the defendant James' testimony that at the time of the accident his foot brakes were not "adequate to control the movement of and to stop and to hold" the truck that he was driving, and that such brakes were not "in good working order." The reason for this condition was that a valve was open which should have been closed. If James closed the valve, as he testified, then it came open while he was en route to the scene of the accident, and what caused it to do so is without explanation in the evidence. But, whether James closed the valve or not, his own testimony discloses a violation of the statute.

The question presented by the assignments of error above set out is whether, in view of the conceded facts, we must say that the defendants were guilty of negligence as a matter of law or whether a jury could properly have found otherwise. As stated, the trial judge instructed the jury that, if the statute regulating brakes was violated, that would be negligence in and of itself. But the instruction on unavoidable accident, which means, under our decisions, an accident which occurs without the negligence of anyone (*Frangos v. Edmunds*, 179 Or 577, 611, 173 P2d 596), nullified the other and left the jury at large with inconsistent instructions. It would be impossible for the defendants

to have been guilty of negligence as a matter of law and at the same time for the jury to find that they were not negligent at all.

■ By an unbroken line of decisions of this court violation of a statute commanding a certain duty is negligence in and of itself. *Anderson v. Finzel,* 204 Or 162, 165, 282 P2d 358; *Speight v. Simonsen,* 115 Or 618, 621, 239 P 542, 43 ALR 1149, and cases there cited. The rule was applied by this court in a case involving the adequacy of brakes and an instruction that violation of the statute was negligence per se was approved. *Daniels v. Riverview Dairy,* 132 Or 549, 555-556, 287 P 77. We also in that case held that there was no error in refusing to give a requested instruction that, if the brakes on the defendant's truck failed to hold the truck "by reason of the fact that water was present therein causing said brake linings to soften temporarily," then the statute was not violated "unless the defendant had or should have had notice of the condition." This case was decided in 1930, at which time the statute provided that failure to equip a motor vehicle "as provided herein, shall be prima facie evidence of an intent to violate the provisions of this act." Oregon Code 1930 § 55-909 (d); but the provision was not referred to in the briefs of counsel, and was evidently overlooked by the court. In the earlier case of *Foster v. Farra,* 117 Or 286, 292-293, 243 P 778, the court said of the former statute that it in effect "condemns the automobile as a dangerous instrumentality when used upon the streets or highways of the state." It is significant that in 1931, when a new motor vehicle code was adopted (Oregon Laws 1931, ch 360), the prima facie provision was omitted.

In *Hickerson v. Jossey,* 131 Or 612, 282 P 768, 283 P 1119, we approved an instruction that failure

to maintain lights on a trailer at night, as required by statute, was negligence per se. Defendant's truck and trailer had been disabled on the highway and abandoned by the driver, who testified that the lights were burning when he left it. The defendant contended that this constituted a compliance with the statute, but the court said that the duty to keep the lights burning was continuing and absolute. To the same effect is *Murphy v. Hawthorne*, 117 Or 319, 322, 244 P 79, 44 ALR 1397.

This court has recognized a qualification of the rule in *Marshall v. Olson*, 102 Or 502, 512, 202 P 736, where it was held that a motorist might be excused for turning otherwise than as the law prescribes in order to avoid an accident. It was said that in "a sudden and perilous emergency" the doing of the act would be sanctioned which "under other circumstances would be a technical breach of municipal regulations."

█ The weight of authority supports the view that violation by the driver or owner of an automobile of a statute containing specific regulations as to brakes is negligence per se. Annotation, 170 ALR 611, 661 and cases there cited; 5A Am Jur 382, Automobiles and Highway Traffic § 249. There are a number of jurisdictions, however, in which, under varying states of fact, it is held that failure to comply with such regulations may be excused. As the rule is sometimes phrased, "violation, without legal excuse, of a statute which prescribes the care required under given conditions constitutes negligence per se." *Florke v. Peterson*, 245 Ia 1031, 65 NW2d 372. The court there listed four categories of "legal excuse": (1) anything that would make compliance with the statute impossible; (2) anything over which the driver has no control which places his car in a position violative of the stat-

ute; (3) an emergency not of the driver's own making by reason of which he fails to obey the statute; (4) an excuse specifically provided by statute. See, also, *Herman v. Sladofsky,* 301 Mass 534, 17 NE 2d 879; 4 Blashfield, Cyclopedia of Automobile Law and Practice (perm ed) 175, § 2682.

Some courts hold that evidence of failure to have such brakes as the statute requires make only a prima facie case which the driver may defend by showing proper inspection and a sudden failure without warning. *Sothoron v. West,* 180 Md 539, 26 A2d 16. There the driver was driving a strange car for the first time, the brakes failed on a steep hill, and the car collided with the rear of another car which had stopped at a traffic light. The driver testified that she had driven a considerable distance through the City of Baltimore without using the brakes. The court expressed incredulity about this testimony, but nevertheless held the defendant liable because she had not even tested the brakes "by the simple pressure of a foot." It was pointed out that it was not the case of a latent defect which could not have been discovered.

On the other hand, in *Amelsburg v. Lunning,* 234 Ia 852, 14 NW2d 680, a case cited by the defendant, the court held that a showing that the defendant had driven his car through muddy water the day before the collision, which, by reason of freezing weather, caused the brakes to freeze, that he had driven only a short distance immediately before the collision, and that the brakes had been relined less than four months before, was sufficient to raise a jury question as to whether there was a "legal excuse" for failure to comply with the statute. A similar holding is to be found in *Walk v. Boudheim,* 223 Wis 514, 271 NW 27.

In *Romansky v. Cestaro,* 109 Conn 654, 145 A

156, the court decided, three to two, that, where the brakes of an automobile had previously functioned properly and the drive shaft through which the foot brake worked suddenly broke, responsibility ought not to be imposed upon the owner or operator. The decision was not rested upon a theory of excuse for violation of the statute but upon the court's construction of the statute. It was said that the true purpose of the statute was "to prohibit the operation of a car upon a highway which was not equipped with two sets of brakes having sufficient power to lock the wheels of the motor vehicle while the car was in motion. If then the brakes, or one of them, becomes defective and that be due to the negligence of the owner or operator for any cause, liability must follow." But the court said, "We should not infer a legislative intent to penalize those who own or operate automobiles for results for which they are in no way responsible." After this decision the statute was amended so as to provide that the brakes "shall, at all times, be maintained in good working order," and the court held, in *Madison v. Morovitz*, 122 Conn 208, 214, 188 A 665, that the effect of the amendment was to make "the statute conform to the view expressed in the minority opinion in the Romansky case, and indicated its intent that the liability of an operator would arise if at any time his brakes ceased to be in good working order without regard to negligence on his part." This construction was followed in *Smith v. Finkel*, 130 Conn 354, 34 A2d 209.

The question is not free from difficulty for, as the Massachusetts court said in *Herman v. Sladofsky*, supra:

"* * * Even those jurisdictions which generally apply the doctrine of negligence *per se* seem

> to recognize an exception in cases where there is a merely technical violation of a traffic regulation which may, for the purposes of a civil case, be regarded as excused by peculiar emergencies or special conditions beyond the control of the driver by reason of which his violation may be found to have been without fault."

See, also, *Martin v. Herzog*, 228 NY 164, 126 NE 814 (per Cardozo, J.); *McCoy v. Courtney*, 25 Wash2d 956, 172 P2d 596, 170 ALR 603; *Rentschler v. Hall*, 117 In App 255, 69 NE2d 619; 1 Shearman and Redfield on Negligence (Rev ed) 22-25. This court, however, as we have seen, has refused to recognize such exceptions where there was failure to comply with a regulation involving brakes (*Daniels v. Riverview Dairy*, supra) or a regulation involving lights on automobiles (*Hickerson v. Jossey*, supra). We think that it is one thing to say that a driver who, without fault on his part, skids over to the left side of the road has not violated the law which requires motorists to keep to the right (for how could it be argued that any such application of the statute was intended?); but quite a different thing to hold that, when the legislature declared that motor vehicles must be equipped with two sets of adequate brakes which shall be maintained in good working order, the statute was only intended to apply if the driver did not know, or had no reason to believe, that his brakes were defective. There would seem to be little, if any, difference, so far as concerns practical effects, between the rule that a brake failure is prima facie evidence of violation of the statute and the rule that such failure is negligence *per se*, but may be excused if it is due to some cause over which the driver or owner of the car has no control; and certainly, in view of the history of our statute, it is not open to this court to adopt the prima facie rule. The

legislature has unmistakably evinced a contrary intention.

■ It may be that, where an accident is caused solely by latent defects in materials employed in construction of the braking system which the usual and well-recognized tests afforded by science and art for the purpose fail to detect, the owner or operator of an automobile should not be held responsible. See 1 Blashfield, Cyclopedia of Automobile Law and Practice (Perm ed) 561 § 672; *Hassell v. Colletti,* (La App) 12 So2d 31; *Jacklin v. North Coast Transportation Co.,* 165 Wash 236, 5 P2d 325. But there is no evidence in this case of latent defects, and that question need not now be decided. The uncontradicted evidence is that the brakes on the truck failed because of an open valve. It is immaterial, in our view of the law, whether it was open because of the negligence of the defendant James or from some other cause. In either case the statute was violated and the plaintiff was entitled to an instruction to that effect. The court's refusal to give such an instruction at the request of the plaintiff was error.

■ The plaintiff has also argued that the hand brake on the truck was inadequate as a matter of law; but this, we think, under the evidence was a question of fact for the jury.

The judgment is reversed and the cause remanded for further proceedings in conformity with this opinion.