Argued November 5, reversed and remanded December 16, 1964

## OREGON FARM BUREAU INSURANCE COMPANY *v.* HARMON
### 397 P. 2d 534

*Walter H. Sweek,* Portland, argued the cause for appellant. On the brief were Vergeer & Samuels and Frederic P. Roehr, Portland.

*Bruce W. Williams,* Salem, argued the cause for respondent. On the brief were Williams & Skopil, Salem.

Before McAllister, Chief Justice, and Rossman, Goodwin, Denecke and Lusk, Justices.

ROSSMAN, J.

This is an appeal by the plaintiff from a judgment of the circuit court in favor of the defendant which is based upon a jury's verdict also in the defendant's favor. The action out of which the judgment arose had its inception in a collision that occurred October 5, 1962, between an automobile driven by one Mrs. Inga Holmes and a farm combine owned and operated by the defendant. The plaintiff, as the insurer of Mrs. Holmes, paid to her the amount of her property damages and then in subrogation of her rights brought this action, upon charges of negligence, to recover from the defendant the sum paid.

The plaintiff-appellant presents only one assignment of error; it is based upon an instruction which was given to the jury and which we will shortly quote.

The collision occurred upon a paved county road in Benton County known as Spring Hill Road. The place of impact was about six miles north of Albany. The road is twenty feet wide. The combine at its broadest place is 12 feet in width. According to Mrs. Holmes,

the hour was 6:30 p.m. and "it was dark. You had to have your lights on to see." Her lights were on.

Spring Hill Road pursues in general a north-south course. October 5, 1962, at about 6:30 p.m. Mrs. Holmes, driving north, approached the spot where she was destined to have this collision. She swore that her speed had been 45 miles per hour.

That day the defendant with a friend of his, Charles Benedict, had used the defendant's combine to cut some oats from Benedict's farm. At 6:00 p.m. or a little later, according to the defendant, the two men had completed their work and decided to return home. They wished to run the combine into Benedict's barn lot. To reach that place it was necessary to move the combine for a few hundred feet south on Spring Hill Road. The maximum speed of the combine was no more than four or five miles an hour. The combine had no lighting equipment. The hour was "after sun down," so the defendant testified. Benedict owned a pickup truck which had proper lighting equipment, and accordingly, when the combine entered upon Spring Hill Road Benedict drove his truck ahead of the combine so that its headlights would serve the combine. The truck's headlights were illuminated.

Presently the two men neared the approach road which led from Spring Hill Road into Benedict's farm lot. That road was to the left of the two men; that is, it entered Spring Hill Road from the east. When the truck and the combine reached that place Benedict turned his truck to the left, crossed Spring Hill Road and drove into his approach road. He then reversed the direction of his truck and ran it to the edge of the pavement of Spring Hill Road. There he stopped and placed his truck at such an angle that it faced southwesterly along Spring Hill Road, that is, it faced on

an angle in the direction from which the plaintiff was coming. He then proceeded to blink his headlights.

When Benedict crossed Spring Hill Road the defendant saw a car (the plaintiff's) approaching from the south. He concluded that he should not undertake to cross, and stopped his combine. We have mentioned that it had no lighting equipment. The defendant swore that when he stopped the combine a part of it was off the pavement.

When Benedict's vehicle was near the east edge of the pavement, blinking its lights, and the unlighted combine was standing partially upon the west half of the pavement, a short distance from Benedict's truck, Mrs. Holmes approached that place. She noticed the blinking lights that faced her. First she inferred that the driver of the car with the blinking lights wished her to dim her lights and did so. Then she noticed that the car was standing still and that it was upon or very near to the east edge of the pavement. She then reasoned that it wished to enter upon the road and that its blinking lights were a turning signal. Accordingly, she swerved to the left. In the meantime she had reduced her speed, so she swore, to about 25 miles per hour. Immediately upon turning to the left she crashed into the unlighted combine which she had not seen until a moment before the crash. She testified that before she turned to the left she had seen no cars and no persons. The crash occurred upon a part of the west half of the pavement, that is, upon the part of the pavement which was the left half for Mrs. Holmes.

The trial judge instructed the jury:

"* * * Now, there are some statutes that are involved in this case and a violation of certain statutes is what we call negligence in and of itself.

That is defined as follows: 'You are instructed that the violation of or failure to obey the requirements of a law which for the safety or protection of others demands or requires certain acts of conduct or forbids or prohibits certain acts or conduct is negligence per se, or, in other words, negligence in and of itself, regardless of what an ordinarily careful and prudent person might or might not do in the absence of such law. Contributory negligence consists of such acts or omissions on the part of a plaintiff—in this case it would be Mrs. Holmes—or an injured person as amounts to a want of ordinary care or a violation or breach of some duty required by law for the safety and protection of others which contributes to the happening or causing of an accident or injury complained of.' Now, at the time of the happening of this incident of collision there were certain statutes that were in affect [sic] that I will call your attention to. * * * 'Upon all highways of sufficient width other than one way highways, the driver of a vehicle shall drive on the right half of the highway except when, (a) the right half is out of repair or for that reason is impassable or, (b) overtaking and passing another vehicle in accordance with certain statutes,' * * * Under these provisions to the statute to which I have just called your attention is what The Court referred to as negligence per se, or failure to obey any of these provisions on the part of either of these parties involved would be negligence in and of itself, regardless of what a reasonably prudent person might or might not do. * * *"

■■ We believe that error prejudicial to the plaintiff occurred when the instruction told the jury that Mrs. Holmes was required to "drive on the right half of the highway except when (a) the right half is out of repair or for that reason is impassable, or (b) overtaking and passing another vehicle" and then adding "failure to obey any of these provisions * * * would

be negligence in and of itself, regardless of what a reasonably prudent person might or might not do."

ORS 483.302 provides:

"(1) Upon all highways of sufficient width, other than one-way highways, the driver of a vehicle shall drive on the right half of the highway except when:

"(a) The right half is out of repair and for that reason is impassable; or

"(b) Overtaking and passing another vehicle in accordance with ORS 483.308."

Beginning with *Weinstein v. Wheeler,* 135 Or 518, 295 P2d 196, this court began to rule that the above statute did "not contemplate strict compliance" with its provisions "except when a car meets and passes another coming from the opposite direction." Mandatory effect was not given to the general language of the statute.

*Falls v. Mortensen,* 207 Or 130, 295 P2d 182, written by Mr. Justice Brand, gave to the interpretation of the statute extensive consideration and reviewed all of the court's decisions subsequent to *Weinstein v. Wheeler.* The decision, after taking note of our prior decisions one by one, summed up their holdings in this way:

"We have no criticism of the decisions in any of the cases cited. They hold the statute inapplicable (1) where the operator, in an emergency, and to avoid injury, drives to the left of the center line, Weinstein v. Wheeler; (2) when the driver has the entire road to himself, there being no other vehicle or pedestrian involved, Hartely v. Berg, and Prauss v. Adamski; (3) when the collision is in an intersection and the accident would have occurred just the same even if the bus had been on

the right side of the highway, i.e., when the fact that the bus was one foot to the left of the center line was not a proximate cause of the injury, Austin v. Portland Traction Co.; (4) when both vehicles are on the right half of the highway going in the same direction, and the left half is unobstructed, Spence, Adm'x v. Rasmussen et al. In none of these cases was there an occupancy of the left lane of travel such as to create a dangerous situation if the traveler on the right side should encroach upon the left lane. We agreed that the primary purpose of the statute was to provide ample clearance for cars proceeding in opposite directions when passing. The language used in the decisions was appropriate to the facts of the specific cases, but none of the cases resembled the one at bar. * * *"

In *Falls v. Mortensen* the statute was read to the jury, but it was not given "negligence per se" effect.

*Gum, Adm. v. Wooge,* 211 Or 149, 315 P2d 119, is later than *Falls v. Mortensen.* It states:

"The requirement of keeping to the right half is not absolute under all circumstances and does not contemplate undeviating compliances except when drivers meet and pass vehicles coming from the opposite direction. Austin v. Portland Traction Co., 181 Or 470, 182 P2d 412. Furthermore, the statute is not considered violated in instances when the driver, acting as a reasonably prudent person, turns to the left to avoid a collision with an approaching vehicle traveling in its wrong lane. La Vigne v. Portland Traction Co., 179 Or 221, 170 P2d 709. Violation of the statute is negligence per se. * * *"

The court should have submitted to the jury the issue of whether Mrs. Holmes, in turning to the left side of the highway under the circumstances then and there existing, acted as a reasonably careful and prudent person.

We believe the court erred in instructing the jury that ORS 483.302 was applicable in this case. The challenged judgment is reversed. The cause is remanded.