Argued March 2, affirmed June 3, 1965

# McCONNELL *v.* HERRON ET AL
402 P. 2d 726

*Thomas Cavanaugh,* Portland, argued the cause for appellants. With him on the briefs were Vergeer & Samuels, Portland.

*Lawrence N. Brown,* Salem, argued the cause for respondent. With him on the brief was William Gehlen, Stayton.

Before McAllister, Chief Justice, and Perry, Sloan, O'Connell, Goodwin, Denecke and Holman, Justices.

GOODWIN, J.

Plaintiff was injured in a collision between the automobile in which she was a passenger and a truck owned and operated by the defendants. The defendants appeal from a judgment for the plaintiff which followed a directed verdict on the issue of negligence.

The collision occurred when the brakes of the truck failed and the truck was unable to stop at a stop light. The defendant offered to prove that prior to the accident his brakes had been working properly, and that the truck's loss of brakes was caused by forces over which the defendant had no control. This offer of proof was rejected by the trial court as irrelevant.

The rejection of the tendered defense presents two issues in this case: (1) Can there be a lawful excuse for a failure to comply with a safety-appliance statute; and (2) if an excuse is relevant, was the excuse tendered by this defendant legally sufficient?

In *Nettleton v. James et al*, 212 Or 375, 319 P2d 879 (1958), we held that a truck operator was liable as a matter of law upon a showing that his brakes were not in good working order as required by ORS 483.444. The *Nettleton* decision has been interpreted as placing Oregon among those jurisdictions that treat proof of a statutory traffic offense as conclusive proof of negligence. See cases noted in Steinmetz, *Statutory Negligence in Oregon Automobile Law*, 1 Willamette L J 503 (1961).

The court below interpreted the *Nettleton* case to hold that proof of any failure to comply with ORS 483.444 makes negligence irrelevant, and liability is imposed without fault. Under this rule, a defendant would never be permitted to present any evidence in excuse of a failure of a safety device required by law to be kept in good working condition. In *Hills v.*

*McGillvrey,* decided this day, the trial court took the contrary view and allowed the jury to consider a tendered excuse of a brake failure.

In the *Nettleton* case, a dictum suggested that a litigant charged with statutory negligence might show that his failure to have adequate brakes was caused by a latent defect in his equipment. The defendant now argues that the *Nettleton* dictum should be expanded to hold that facts other than latent defects may constitute a lawful excuse for a statutory violation involving safety equipment.

In the case at bar, the defendant offered to show that about one fourth of a mile before reaching the scene of the collision his truck had run over a trench in the road where a gas line was being installed. He argued that the jury could draw an inference that the bump had damaged his braking system. The defendant contends that he should be allowed to introduce his evidence in order to show that the damage to his brakes was caused by forces beyond his control and that he had no time in which to discover or remedy the sudden loss of brakes. We construe his offer of proof as an attempt to prove that compliance with the statute had been made impossible by forces over which he had no control.

Four choices are open. One is a view that is advocated in 2 Harper and James, The Law of Torts, § 17.6 (1956), and by other writers, to the effect that the violation of a statute is irrelevant. Under this view the burden of going forward with the evidence would not be affected by a violation of the statute. The reasonableness of the actor's conduct would be a question for the jury without reference to the statute.

The second choice is that the violation of the statute is *prima facie* evidence of negligence and creates a

presumption which may be overcome by the violator showing that he was acting as a reasonable person would have acted under the circumstances even though he failed to comply with the statute.

The third choice is the one adopted by the trial court, and one which finds support in our earlier cases: that fault, as such, is irrelevant and that proof of failure for any reason to comply literally with a statutory standard of care constitutes conclusive proof of negligence regardless of the presence or absence of an excuse for such failure to comply. *Nettleton v. James,* supra; *Daniels v. Riverview Dairy,* 132 Or 549, 287 P 77 (1930); *Foster v. Farra et al,* 117 Or 286, 293, 243 P 778 (1926).

■ The fourth choice, and the one we adopt, is a modification of the third choice set forth above. Any violation of a statutory standard of care is negligence as a matter of law except that it may be excused where the party who failed to comply with the statute shows that his violation was caused by circumstances beyond his control and that it was, under the circumstances, impossible, regardless of the degree of care he might have exercised, for him to comply with the statute.

■ Under the preferred rule, if a litigant can prove that his adversary violated a statute enacted to regulate either the equipment or the operation of motor vehicles, he is entitled to an instruction that such conduct is negligence. The rule we adopt today modifies the negligence *per se* rule only in that the party found to be in violation of the statute is entitled to show, if he can, facts as indicated above that would excuse the violation. The same exception has been followed in cases involving statutory standards for the operation of vehicles. See, e.g., *Raz v. Mills,* 231 Or 220, 372 P2d 955 (1962), and *Marshall v. Olson,*

102 Or 502, 512, 202 P 736 (1922), both involving statutory rules other than those referring to safety equipment. In those cases, excuses have been deemed sufficient, if believed by the jury, to relieve the violator of a statute from the consequences of his violation.

■ Our decision in *Nettleton v. James,* supra, was grounded in part upon an assumption that there was a legislative intent to impose civil liability upon violators of safety-equipment statutes regardless of the presence or absence of any sort of an excuse for the violation. We are now of the opinion that the motor vehicle code was not intended to eliminate the element of fault from the law of torts. While it is true that fault will be present in the vast preponderance of cases in which a litigant's conduct fails to meet a statutory standard, a litigant nonetheless has a right to prove, if he can, that his noncompliance was caused by circumstances beyond his control and that it was impossible, regardless of his degree of care, for him to comply with the statute.

Accordingly, we apply to equipment defects the same rule we have applied in the past to operational errors. Liability in both situations is based upon fault rather than upon a theory of absolute liability. *Nettleton v. James,* supra, *Daniels v. Riverview Dairy,* supra, and *Foster v. Farra et al.,* supra, to the extent that they impose liability without fault, are overruled.

Because the case comes to us by way of an exception to the exclusion of an offer of proof, the matter of instructing juries is not specifically before us. It has been argued, however, that any modification of the negligence-per-se rule will unduly complicate the submission of automobile collision cases to the jury.

Nothing in this decision is intended to alter the standard instruction on negligence as a matter of

law as it is ordinarily given when one party alleges, and the other denies, that there has been a violation of a section of the motor vehicle code. See, e.g., Instruction No. 10.03, Oregon Jury Instructions for Civil Cases, which reads:

> "In addition to common law negligence there is also statutory negligence, which consists of the violation of a law which, for safety or protection of others, requires certain acts or conduct, or forbids certain acts or conduct.
>
> "Where I call your attention to any such law, a violation of such law is negligence in and of itself."

■ In addition to the foregoing instruction, there should be given an additional instruction only when it has been admitted, or established by proof, that one party failed to comply with a section of the motor vehicle code but has offered evidence to show that his violation was legally excused. In such a case, the trial judge must rule as a matter of law whether the facts asserted as an excuse would, if true, constitute a lawful excuse for the violation. If the judge deems the alleged excuse legally sufficient, he should instruct the jury that if the jury believes the facts asserted as an excuse the statutory negligence rule would not apply to the excused conduct.

■ The jury would not, of course, be permitted to substitute its own standard of conduct for the one established by statute. If the jury finds that the person charged with violating the statute did violate the statute and had no legally sufficient excuse for doing so, that finding is conclusive on the issue of negligence.

■ The final, and decisive, question in the case at bar is whether the defendant driver's offer of proof

measured up to the kind of evidence which, if believed, would have constituted a lawful excuse for his failure to keep his brakes in good working order. We hold that it would not.

The driver's testimony that he drove over a ditch in the road might indeed support an inference that bumping across the ditch caused his brakes to fail. This evidence, however, is not sufficient to go to the jury as an excuse. The offer does not show that if the bump was severe enough to cause damage to brakes that otherwise were in good condition the circumstances which damaged the brakes were beyond the control of the driver. The offer likewise fails to show that the circumstances denied the driver an opportunity to discover whether or not the bump had damaged his brakes. The offer of proof is too speculative to rise to the dignity of evidence which, if believed, would prove that it was impossible to maintain the brakes in good condition, or that circumstances wholly beyond the driver's control caused the brakes to fail. For all that the offer of proof shows, the circumstances at all times remained under the driver's control. If he did encounter a bump severe enough to put his brakes out of service, the driver would have been under a duty to test his brakes before proceeding further, or to explain why he could not make such a test.

■ We will not attempt, in this case, to anticipate all the hypothetical factual situations that can be imagined, nor will we decide, in advance, whether or not such hypothetical facts should go to the jury as an excuse for a failure to comply with each of the various sections of the code. We hold only that unless a party can show impossibility of compliance, regardless of the degree of care, or that his failure to comply with the statute was caused by circumstances over

which he had no control, he has not tendered a valid excuse. An offer of proof, to be received as a possible excuse, must contain facts which, if true, would show that compliance with the statute was clearly impossible, regardless of the degree of care, or was prevented by circumstances wholly beyond the party's control. No such facts were tendered in the case at bar. There was, accordingly, no error in rejecting the offer.

AFFIRMED.

O'CONNELL, J., dissenting.

In *Henthorne v. Hopwood et al,* 218 Or 336, 338 P2d 373, 345 P2d 249 (1959), I criticized the doctrine that the violation of a statute or ordinance is negligence per se but I expressed the view that the doctrine should not be discarded because it was firmly established in this state. Upon further reflection I now believe that the doctrine should be abolished.

As I said in the *Henthorne* case, "it seems little more than a fiction to assume that in the enactment of traffic laws the legislature or a city council intended to prescribe the scope of relief available to persons seeking compensation for injuries in automobile cases."[1] (218 Or at 341).

---

[1] The idea has been expressed elsewhere:

"There has been much discussion of the theoretical problem of why the violation of a purely criminal statute which says nothing about tort liability should ever give rise to it. The reason usually given by the courts is that the legislature intended to provide such liability, or that such an intent is to be 'presumed.' Ordinarily this is the barest fiction, since the obvious conclusion to be drawn from the silence of the statute as to any civil remedy is that the legislators intended not to provide it, or at least that they did not have the question in mind and had no intention at all. Anyone who has met with legislative committees or has had any experience in drafting statutes will have a strong suspicion that the latter is the truth." Prosser, Contributory

It may be conceded that traffic laws represent a legislative declaration of the standard of conduct which a person must meet in using the public highways. However, the standard is meant to be applied in determining whether there has been a violation of the statute warranting the imposition of a criminal penalty; the same standard is not necessarily applicable in determining the rights of a plaintiff in a personal injury case. The legislature may feel that the imposition of strict liability for the violation of the statute is necessary for the effective enforcement of the law. It does not follow that the legislature regarded the same standard as necessary in determining the rights and liabilities of the parties to personal injury litigation.

In *Nettleton v. James,* 212 Or 375, 319 P2d 879 (1957) it was assumed that the legislative standard necessarily becomes the judicial standard. It was further assumed that the violation of the statute requiring the maintenance of effective brakes gives rise to strict liability. That was clearly erroneous and I agree that *Nettleton* should be overruled.

The majority appears to give special effect to the statutory standard in another way which I think is also objectionable. The majority holds in effect that the

---

Negligence as Defense to Violation of Statute, 32 Minn L Rev 105, 107 (1948).

"* * * [P]urely criminal statutes are not an exercise of the legislature's power to control damage suit litigation.

"* * * The legislature has not determined the wisdom of using criminal proscriptions as a measure or limit of responsibility to respond in damages." Morris, the Role of Criminal Statutes in Negligence Actions, 49 Colum L Rev 21, 46, 48 (1949).

See also Lowndes, Civil Liability Created by Criminal Legislation, 16 Minn L Rev 361 (1931); 2 Harper & James, Torts § 17.6 (1956).

violation of a traffic statute creates a presumption of negligence. The majority fails to explain why the violation of a standard set by the legislature should have any different procedural effect (i.e., as to when a case can be submitted to the jury or when submitted, why the fact that a statute was violated should be of evidentiary value) than a violation of a standard set by the court.

The evidence of a party's fault may be so clear that the court is compelled to find negligence as a matter of law. That conclusion may be reached whether the standard against which the party's conduct is judged has been set by the court or the legislature. In stating that a violation of the statute creates prima facie negligence the majority opinion leaves the impression that violation of the same standard, if it were established by the court rather than by the legislature, would not create prima facie negligence. I contend that the violation of a standard operates in precisely the same way whether the standard was originally created by the court or the legislature. If this is so, there is no reason for us to speak of the violation of a statutory standard as having any special procedural operation and we should, therefore, dispense with statements that the violation of a statute is negligence per se or prima facie negligence or endowed with any other special effect.

The fact that a statute penalizes a person for engaging in a certain type of conduct may be considered by the court in establishing a tort standard. The case of a pedestrian walking on the shoulder of a highway with his back to oncoming traffic is illustrative. In the absence of a statute, a court might refuse to declare this conduct negligent as a matter of law without proof of a failure to exercise care in

some other respect. Yet if a traffic statute penalized such conduct a court might reach a different conclusion because the legislature regarded the conduct as dangerous. Absent the applicability of the last clear chance doctrine, or evidence sufficient to indicate that the conduct did not cause the injury, or some other reason for leaving the question to the jury, a court might conclude that the pedestrian was contributorily negligent as a matter of law.

Even if the court does fix the standard differently because of the legislative proscription, the fact remains that the court establishes the standard and having done so the statute is no longer of any significance in deciding whether the case should be submitted to the jury.

When we say that the violation of a statute is negligence per se we are merely saying that the violation of the statutory standard is negligence. This is obviously true. If we know the standard and it is assumed that there is a violation, then certainly there must be negligence because by definition negligence is the failure to meet a standard of conduct. It is just as illuminating to say that the violation of a standard fixed by the court is negligence per se. If we assume a violation of the appropriate standard, then it is clear that the court must take the negligence issue from the jury.

The view taken by the majority probably results from a failure to identify the standard it purports to apply. The statement that the violation of a statute is negligence per se must be intended to mean that the violation of the *standard* set by the legislature is negligence per se. What is this standard? In the case of a statute making it unlawful to drive with defective brakes, is the statute violated within the meaning of

tort law merely because the defendant drives with defective brakes, irrespective of his freedom from fault? Or is he liable unless he can show that it was impossible to comply with the statute? Or is the standard violated only if the defendant drives with defective brakes under circumstances where he is at fault?

Note that the majority opinion rejects the standard of strict liability once set by this court in the *Nettleton* case. In so doing, the court has elected to change the standard to something less than strict liability. It must appear obvious that the court, not the legislature, is deciding what the standard is. Why, then, mention the statute at all? It does not help to explain where the standard should be set.

But even more disconcerting is the fact that the opinion does not explain to the trial bench and bar what is meant by this new standard. Defendant must prove that "his noncompliance was caused by circumstances beyond his control and that it was impossible, regardless of his degree of care, for him to comply with the statute." What is meant by "noncompliance * * * caused by circumstances beyond his control"?

I take this language to mean that defendant must show affirmatively that the brake failure was beyond his control. If he shows this, then he has shown that it was impossible for him to comply with the statute. Under this test, would defendant lose in the present case if he were not negligent in driving over the ditch? Would defendant's "noncompliance" then be "caused by circumstances beyond his control"? Would the test apply if a defendant showed that immediately prior to the accident his brakes had been tested and were found to be in good working order and he had no reason to believe that his brakes would fail?

The defendant should not be liable for injury resulting from the failure of brakes on his car unless the circumstances are such that a reasonable man would have reason to believe that the brakes might not function when needed. The majority has created a more stringent standard which approaches the strict liability of the *Nettleton* case but yet is somewhere in the area of negligence. There is no explanation as to how the standard can be applied and, what I regard as more objectionable, no reason is given why the standard is set at a level higher than that which obtains when no statute is involved.

The real difficulty facing the courts is that of determining whether the evidence relating to the violation of the standard should be submitted to the jury. This difficulty is the same whether the case involves the alleged violation of a statutory standard or a court-made standard. No problem is presented where there is evidence from which the jury could properly conclude that the standard was not violated. For example, where it is alleged that defendant failed to stop at a stop signal, usually there is an issue as to whether he did or not. If it is conceded or if the evidence clearly shows that he did not stop, the question of negligence is resolved and the case can be submitted to the jury only on a question of causation or last clear chance or justifiable violation or other defense. If there is no such defense, then the verdict must be directed.

I can make my point clearer by comparing the present case with the recent case of *Simpson v. The Gray Line Co.*, 226 Or 71, 358 P2d 516 (1961). In the latter case plaintiff, a passenger on a chartered bus, was injured when a tire blew out and the bus overturned. Plaintiff contended that the doctrine of

res ipsa loquitur applied and that it created a presumption of negligence. We held that res ipsa applied but that it did not create a presumption of negligence. There is no statute requiring vehicular tires to be fit tires. We held, however, that "there is a duty upon a carrier to furnish tires that are fit for the intended use." (226 Or at 74). Thus we set up a standard of conduct. We let the jury decide whether the standard was violated. If, at the time the *Simpson* case was decided, there had been a statute imposing a penalty for the failure to maintain adequate tires, would the problem be any different? Would the majority then say "the violation of the statute is prima facie negligence and thus creates a presumption of negligence"?

As I have previously stated, there is no reason why the violation of a statutory standard should be treated differently from a court-made standard. In each case the court must decide whether there is evidence to go to the jury on the issues presented. The decisional process is exactly the same in both situations.

In the present case the majority appears to have said that a violation of a statute requiring brakes is is prima facie evidence of negligence. There is as much reason for saying that the violation of the standard created by the court for the maintenance of adequate tires is prima facie evidence of negligence.

Whatever standard is adopted, the court will have to examine the evidence to determine if there is negligence as a matter of law. Some standards are more sharply delineated than others and when they are it is easier for the court to say as a matter of law that the standard has been violated. I suspect that it is in such cases that we most often describe the court's function in passing upon the sufficiency of

the evidence in terms of a presumption arising out of the violation of a statute. Thus we are more likely to say that the failure to maintain adequate brakes is presumptive negligence than to say that following another car too closely is presumptive negligence because the former appears to prescribe a more definite standard than the latter.

Where a statute provides a penalty for failure to walk facing oncoming traffic and it is conclusively established that the plaintiff walked with his back to the oncoming traffic, the avenues left open for plaintiff to show that his conduct was not a substantial factor in producing the injury are limited. But simply because the evidentiary scales weigh heavily against him, we should not translate this into a presumption because of the violation of a statute; it is enough to say that he cannot get to the jury because there is insufficient evidence to suport a verdict in his favor. If we wish to regard certain conduct (such as walking with one's back to oncoming traffic) as creating a presumption of negligence, we should not express the idea in terms of the violation of a statute but in terms of the conduct which will give rise to the presumption. Thus we could say that if the evidence conclusively establishes the fact that the plaintiff walked with his back to the oncoming traffic there is a presumption of negligence which would entitle the defendant to a directed verdict unless there is evidence showing that the plaintiff's conduct was not a substantial factor in producing his injury or some other defense could be based upon the evidence. My point is that whether or not we recognize presumptions in such cases, we should apply the same rule whether the case involves the violation of a traffic statute or the failure to meet a non-statutory standard set by the court.

And so with the present case—nothing is added by speaking of the violation of the statute as creating prima facie negligence. The inquiry in this case should be whether there is evidence from which the jury could decide that the brake failure was the result of defendant's fault or some unforeseeable cause. I believe that there was evidence from which the jury could conclude that defendant's brakes failed as a result of factors over which defendant had no control and with respect to which he was not at fault. I would add that because the majority holds, in effect, that violation of a statute gives rise to a presumption of negligence, the jury must be instructed on the presumption and the basis upon which it rests. See *U. S. National Bank v. Lloyd's,* 239 Or 298, 396 P2d 765, 775 (1964).

The judgment should be reversed and the cause should be remanded for a new trial.

DENECKE, J., specially concurring in O'Connell, J., dissent.

The entire court is now of the opinion that the doctrine of negligence per se as previously applied must be changed. I view the majority decision as a substantial change. The majority expressly overrules the cases concerning the brake statute. In my opinion the majority also has changed the application of the statutes pertaining to the operation of vehicles. For example, in *LaVigne v. Portland Traction Co.,* 179 Or 221, 170 P2d 709 (1946), the bus driver, exercising his judgment in meeting an emergency, turned onto the wrong side of the road and collided with an oncoming car. We did not discuss his violation of the statute in terms of being "beyond his control" or that it was "impossible" for him to comply with the statute.

Instead, we used the familiar negligence phrases and found the bus driver acted as a reasonable man and, therefore, the statute was inapplicable. Accord, *Marshall v. Olson,* 102 Or 502, 202 P 736 (1922). In *Raz v. Mills,* 231 Or 220, 226, 372 P2d 955 (1962), and *Gum, Adm. v. Wooge,* 211 Or 149, 159, 315 P2d 119 (1957), we held a violation of the statute made a prima facie case. If I correctly understand the majority opinion, it now holds that it is immaterial whether one in the bus driver's position acted reasonably; the prima facie rule is rejected; the only acceptable excuse for violating a statute is that it was impossible to not violate the statute.

As the entire court now believes that the negligence per se doctrine is in need of revision and I doubt the finality of the changes made, I am of the opinion that this is an appropriate time to discard it as an illogical anomaly. I concur in Mr. Justice O'Connell's dissent.