Argued November 21, 1929; affirmed February 18, 1930.

RAMSDELL *v.* FREDERICK ET AL.

(285 P. 219)

*John S. Coke* of Portland (Griffith, Peck & Coke of Portland on the brief) for appellants.

*Paul R. Harris* of Portland (B. F. Mulkey and Davis & Harris, all of Portland, on the brief) for respondent.

*Lonergan & Wagner* of Portland for defendants.

McBRIDE, J.     This is an action brought by the plaintiff F. C. Ramsdell to recover damages for an injury suffered by him in a collision of a car operated by the Red Top Cab company and a car owned by the Chas. R. McCormick Lumber company and driven by C. L. Osborne. The complaint, after alleging the corporate character of the two defendants, proceeds as follows:

"That Williams avenue and Weidler street are intersecting thoroughfares in the city of Portland, Oregon, and are greatly frequented by all kinds of traffic, said Williams avenue running in a general northerly and southerly direction and said Weidler street running in a general easterly and westerly direction.

"That on or about December 11, 1927, at or about the hours of 12:30 a. m. the plaintiff was a passenger for hire in a taxicab owned and operated by the defendant Red Top Cab Co., a corporation, being operated by the defendant C. A. Frederick in a southerly direction on said Williams avenue when the same came into violent collision with an automobile owned and operated by the defendant Chas. R. McCormick Lumber Co., a corporation, and being operated by the defendant C. L. Osborne in a westerly direction on said Weidler street; and as a result of said collision plaintiff received severe and permanent injuries, the same being hereinafter more specifically set forth.

"Plaintiff alleges that defendants were careless and negligent in the following particulars, to wit:

"(a)  That said defendants at said time and place operated their said automobiles in the said street intersection at a high, dangerous and reckless rate of speed, to wit: approximately 30 miles per hour.

"(b) That said defendants at said time and place carelessly and negligently failed to have their said motor vehicles under proper control.

"(c) That said defendants at said time and place carelessly and negligently failed and neglected to keep a proper lookout for other vehicles lawfully using said intersection.

"(d) That said defendants at said time and place carelessly and negligently failed to give or sound any notice or warning of their approach.

"(e) That said defendants at said time and place carelessly and negligently failed to exercise reasonable care to avoid said collision."

Thereafter follows an allegation of plaintiff's interest, and a prayer for general and special damages.

The defendants answered separately. The Chas R. McCormick Lumber company answered stating that the true name of the corporation was the Chas. R. McCormick Lumber company of Delaware and admitting that Williams avenue and Weidler street are intersected thoroughfares and that Williams avenue runs in a northerly and southerly direction and Weidler street runs in a generally easterly and westerly direction, and further answering as follows:

"Admit that on or about December 11, 1927, at or about the hour of 12 a. m. plaintiff was a passenger for hire in a taxicab owned and operated by defendant, Red Top Cab Co., a corporation, being operated by the defendant, C. A. Frederick, in a southerly direction on Williams avenue, when the same came into collision with an automobile owned by defendant, Chas. R. McCormick Lumber Co. of Delaware, and that said last named automobile was at said time being operated by defendant, C. L. Osborne, on said Weidler street; but deny that said automobile owned by the defendant, Chas. R. McCormick Lumber Co., of Delaware, was at said time being operated by said defendant, and deny

that said automobile was being operated in a westerly direction, but, on the contrary, allege that said automobile was owned by the said Chas. R. McCormick Lumber Co. of Delaware but was not being operated by it, or any of its agents, but was being operated by the said C. L. Osborne in his own behalf and for his own interest, and was being operated by him at said time in an easterly direction along said Weidler street and across the intersection of said Weidler street and Williams avenue.

"Except as hereinabove admitted, stated or qualified, these answering defendants deny each and every allegation contained in said amended complaint."

For a further and separate answer and defense, the said Chas. R. McCormick Lumber company alleges that on the date of the injury plaintiff was a passenger for hire in a taxicab owned and operated by the defendant Red Top Cab company and driven by C. A. Frederick, an employee of the said cab company in a southerly direction on Williams avenue, and approaching and entering Williams avenue with Weidler street, and that said taxicab was operated as aforesaid by the defendant Red Top Cab company and C. A. Frederick at said time and place in a negligent, careless and reckless manner and at a high rate of speed.

"That at the time and place aforesaid, the defendant C. L. Osborne, was operating in his own interest and behalf the said automobile owned by the defendant, Chas. R. McCormick Lumber Co. of Delaware, and that said C. L. Osborne at said time and place was operating said automobile in an easterly direction on said Weidler street and approaching said Williams avenue, in a careful and prudent manner and at a moderate rate of speed, and that when the said automobile driven by said defendant Osborne approached the intersection of said Weidler street and Williams avenue, it was proceeding at a rate of speed of approximately 12 to 14 miles per hour, and not exceeding 14 miles per hour.

"That at the time and immediately preceding the time said C. L. Osborne entered said intersection, he looked to his right and also to his left to observe whether other vehicles were crossing said intersection, and observing no other vehicle in or approaching said intersection, he thereupon proceeded to drive said automobile across said intersection along the south side of said Weidler street, at a moderate rate of speed as aforesaid, and that when said automobile had reached the center of the said intersection, the said Osborne observed the said taxicab approaching from his left, in a southerly direction and at a high rate of speed, and said defendant Osborne thereupon immediately applied the brakes to the said automobile and immediately stopped said vehicle; that the said operator of the said taxicab thereupon attempted to drive said taxicab around the front of said automobile operated by the said Osborne, but that he carelessly, negligently and recklessly drove and operated said taxicab against the front of said automobile, and thereby and by reason of the high rate of speed at which the said taxicab was being operated, said taxicab, after striking the front of said automobile, proceeded past the said automobile a distance of approximately 50 feet and then turned over upon its side and top.

"That at the time and place of the accident involved herein, there was in full force and effect in the city of Portland an ordinance, being known as ordinance No. 52353 entitled 'An ordinance regulating traffic, providing a penalty for violation thereof, repealing all ordinances or parts of ordinances in conflict herewith, and declaring an emergency,' as amended by ordinance No. 53628 and said ordinance as amended provided, among other things, that Weidler street from the east line of Wheeler street to the east line of east Twenty-fourth street shall be, and it was therein designated as a through traffic street, and provided that vehicles using said Weidler street shall have the right of way over vehicles crossing on other streets, and also provided that every person operating a vehicle on any street intersecting the said through

traffic streets and said Weidler street, shall bring such vehicle to a full stop before entering or crossing such through traffic streets and that such vehicle shall not have the right of way until it proceeds after having made such stop.

"That the driver of said cab was, at the time and place of said accident, the agent and representative of the plaintiff, and the plaintiff and the said driver were then and there engaged in a joint enterprise in which the movement of said cab was a factor, and by reason thereof the negligence of the driver, as hereinafter alleged, was, and is, imputed to said plaintiff.

"That the said defendants, Red Top Cab Co. and C. A. Frederick, the driver of said taxicab, were careless and negligent in the following particulars, to wit:

"(a) That at said time and place they operated the said taxicab southerly in said Williams avenue and in said intersection at a high, dangerous and reckless rate of speed, in excess of twenty miles per hour.

"(b) That at said time and place they carelessly and negligently failed to have said taxicab under proper control.

"(c) That at said time and place they carelessly and negligently failed and neglected to keep a proper or any lookout for vehicles lawfully using said street and intersection.

"(d) That at said time and place they negligently failed to sound the horn of said taxicab, or to give any notice or warning of its approach.

"(e) That at said time and place they negligently and carelessly failed to concede or give the right of way to the said automobile being operated by said Osborne, which was at said time and place upon the right of the said operator of said taxicab.

"(f) That at said time and place they negligently and carelessly failed to stop their automobile before entering into and crossing said Weidler street.

"(g) That said defendants, Red Top Cab Co. and C. A. Frederick, at said time and place, carelessly and negligently failed to exercise reasonable or any care to avoid said collision.

"That the said collision and any injury which may have resulted to the plaintiff therefrom were approximately and wholly due to the negligence, carelessness and recklessness of the said defendants, Red Top Cab Co. and C. A. Frederick, as in this amended answer set forth, and not otherwise."

On December 21, 1928, and at the time of the trial of the above cause, it was stipulated by and between the plaintiff and the defendants, Chas. R. McCormick Lumber company of Delaware and C. L. Osborne, that the reply of the plaintiff to the separate answer of the said defendants may be considered as the reply to the amended separate answer of said defendants. The reply of the plaintiff to the separate answer of the defendants, C. L. Osborne and Chas. R. McCormick Lumber company of Delaware, a corporation, was filed on September 11, 1928.

The cause having been put at issue by an appropriate reply, the cause was tried to a jury which returned a verdict against the defendants for special damages in the sum of $600, and general damages in the sum of $1,550, from which said verdict judgment was rendered against both the defendants, the Chas. R. McCormick Lumber company having appealed to this court from said judgment. The Red Top Cab company not having appealed, their pleadings are omitted from this statement, except as to say generally that they were sufficient to put in issue the material allegations of the complaint and of the answer of the Chas. R. McCormick Lumber company so far as any alleged negligence on the part of the cab company is concerned.

In the brief the able counsel for defendants raised the following questions: First, a failure on the part of the plaintiff to prove any negligence as against the appealing defendant; second, it is urged there is such

contributory negligence upon the part of the plaintiff appearing in the records, that, as a matter of law, the appealing defendant was entitled to have instructions directing the verdict in its favor; third, that the court erred in its instructions in regard to the right of way of the respective parties; and fourth, that the court erred in regard to its instructions as to the duty of a party upon ''stop streets.''

We will discuss these questions in the order in which they are presented in the brief of learned counsel. As a preliminary statement, we will say that the case was tried upon issues, some of which appear to be joint and others several. Both parties defendants agree to the following facts: That the car of the appealing defendant was not driven from an easterly direction and headed west, but from a westerly direction and headed east; that the collision took place somewhere near the center of Williams avenue; that the defendant, the cab company, was driving south near the center of Williams avenue, and that the car of the McCormick Lumber company was being driven in an easterly direction on Weidler street and not in a westerly direction as alleged in the complaint. Both parties defendant admit that there was a collision between the cars and both parties defendant agree that there was some damage to plaintiff's person by reason of such collision. Both parties defendant disagree as to the responsibility for such collision, the Red Top Cab company claiming that it was caused by the reckless and unlawful driving and management of the Chas. R. McCormick Lumber company's car, and the Chas. R. McCormick Lumber company defendant claiming that the collision was caused by the recklessness and negligence of the driver of the Red Top Cab company's car.

The testimony introduced by plaintiff as to the cause of the collision is to the effect, that he was being driven in a southerly direction to a place designated by him at Sellwood; that when arriving at the inter-section of Williams avenue with Weidler street, he saw a car approaching from the east down Weidler street, driving in a westerly direction, and that this car was the only car he observed; and that within a short time, he thinks about a second after he noticed the car, the cab, in which he was riding, was struck on the easterly side and about the middle of the cab, and by the impact was thrown to the north side of the north intersection of Weidler street with Williams avenue and rolled over on its side. He does not testify that it was the Chas. R. McCormick Lumber company's car which struck him, but says that he saw no other car and that when he observed it he thought that it was sure to hit, and he was pretty sure it did hit. He testified that the cab, in which he was riding, was being driven at the rate of about 35 miles an hour and that it did not slow up at the intersection. He was unable to state the speed of the car, which he says was coming towards the cab from the east, but states that it was his opinion that it was traveling at least at the rate of 30 miles an hour. The plaintiff's testimony is entirely out of line with other testimony in the case, as the testimony of the driver of the cab, the driver of the McCormick car, and the final indications on the ground after the accident indicated that the McCormick car was coming from the west, and, immediately after the accident, both cars were to the south of the south intersection of Weidler street and Williams avenue, the cab being about 20 feet south of the south intersection and the McCormick car being about 10 feet south. Both the driver of the car and

the driver of the cab agree, practically, as to the direction in which each was headed, and it is evident that the plaintiff was mistaken as to their relative direction or wilfully misstated the facts. It may be said for him that he was in a rather dazed condition after the accident, and this may possibly account for the discrepancy in his statement in regard to the direction in which the cars were traveling. While the jury had a right to believe his testimony in opposition to all the other witnesses, it is improbable they did so and we assume, for the purposes of this discussion, that the McCormick car was traveling in an easterly direction up Weidler street, and the cab was traveling in a southerly direction down Williams avenue.

██ We think the evidence of Mr. Frederick indicates that he was in a position to have seen the McCormick car in time to have averted the accident, if he had kept a proper and reasonable lookout, and that his own testimony indicates that he did not exercise reasonable caution in observing the near proximity of the car or in taking pains to avoid the accident. He first saw the car from an unobstructed view when he was within 25 feet of the north intersection of the two streets, which was then, according to his observation, about 120 feet west of the west intersection of the two streets, and he does not appear to have paid any attention to the car from that time on although he says that he saw it later "out of the corner of his eye." The law places a strong injunction upon drivers to observe cars coming on the right and the jury were warranted, we think, in finding that the driver of the cab failed to do this in the present incident, and, whether he was going 35 miles an hour, as the plaintiff testified, or from 15 to 18 miles an hour,

as he testified, makes no difference, if, by careful observation, he would have discovered the proximity of the other car in time to have averted the accident. The cab was a common carrier for hire and the law places upon common carriers the duty of exercising a very high degree of diligence in matters respecting the safety of their passengers, and it was a matter for the jury to say whether this degree of diligence was exercised by the cab company under the circumstances.

■ The law also requires every driver, whether he has the right of way or not, to use ordinary diligence to avoid injuring persons, whether pedestrians or otherwise, crossing the public streets, and to use reasonable efforts to avoid causing an unnecessary injury.

■ The evidence indicates that if the driver of the McCormick car had taken the pains to look, he could have seen the cab before he entered the west intersection of Weidler street and Williams avenue, and yet, he testified that he never saw the cab until the collision occurred. He says he just saw a white flash and next came the collision. We think the jury may well have inferred that if he had kept the proper lookout, or any lookout, he would have seen it in time to have avoided a collision with it and would not have run into the cab, or the cab would not have run into him.

While, to the writer of this opinion, the evidence of the negligence of the driver of the McCormick car seems very slight, yet there was *some* evidence, and, under the constitutional inhibition, if there is any evidence, we are bound by it and can not weigh contradictory evidence in opposition to the verdict of a jury rendered under such conditions.

■ We do not think there was any error in the instruction, that the court gave, respecting the failure to

stop at what is designated as a "stop street." An ordinance of the city of Portland, among other things, provides that Weidler street from the east line of Wheeler street to the east line of East Twenty-fourth street shall be and it is therein designated as a through traffic street, and provides that vehicles using Weidler street shall have the right of way over vehicles crossing on other streets, and that every person operating a vehicle on any street intersecting said through traffic streets and said Weidler street shall bring such vehicle to a full stop before entering or crossing such through traffic street and such vehicle shall not have the right of way until it proceeds after having made such stop.

Standing alone this ordinance might have the effect contended for by the appellant here, but it must be read in connection with section 1, subd. 28, chapter 217, Laws 1927, which reads as follows:

"The state highway commission, with reference to state highways, and local authorities, with reference to highways under their jurisdictions, are hereby authorized to designate main-traveled or through highways by erecting at the entrances thereto from intersecting highways signs notifying drivers of vehicles to come to a full stop before entering or crossing such designated highway, and whenever any such signs have been so erected it shall be unlawful for the driver of any vehicle to fail to stop in obedience thereto. All such signs shall be illuminated by the headlights of an approaching vehicle or by street lights."

We think, reading the ordinance in the light of this provision of the statute, which is general and controlling in matters of this character, that the defendant cab company was not required to stop at the intersection of the through traffic street unless the necessary "stop street" sign had been erected, and there is no

evidence that such was the case here, and, in fact, there is evidence that no such "stop street" sign existed at the intersection. In this view, the instruction of the court was as favorable as the defendants had a right to require.

■ Exception is also taken to the following instruction:

"With respect to the rule as to the right-of-way, you are instructed that the right of precedence at an intersection of two highways given by law has no proper application except where the travelers or vehicles on the intersecting highways approach the crossing so nearly at the same time and at such rates of speed that if both proceed, each without regard to the other, a collision or interference between them is to be reasonably apprehended. In such case it is the right of the one having the precedence to continue his course, and it is the duty of the other to yield to him the right of way. But if a traveler not having such right of precedence comes to the crossing and finds no one approaching it upon the other highway within such distance as to reasonably indicate danger of interference or collision, he is under no obligation to stop or to wait but may proceed to use such crossing as a matter of right.

"Upon arriving at the crossing, such traveler is called upon, in the light of all the facts and circumstances as they would have appeared to a person of ordinary caution and prudence, to determine whether he can cross with a reasonable degree of safety."

■ This instruction is precisely in line with our holding in *Casto v. Hansen,* 123 Or. 20 (261 P. 428), and *Red Top Taxi Co. v. Cooper,* 123 Or. 610 (263 P. 64). A very strong argument is made as to the contributory negligence of plaintiff in not remonstrating with the driver of the taxicab when, as he says, the cab was being driven at 30 or 35 miles upon the streets of Portland.

Such a rate might be unlawful and in a sense a violation of an ordinance, yet, we do not think, as a matter of law, it is negligence on the part of the passenger to refrain from remonstrating. There may be circumstances under which, while driving at such a speed is a technical transgression, a reasonable man would not think it necessary or prudent to remonstrate with a common carrier as to his speed, and especially upon a street, where, at the time, there is little traffic and no serious danger to be apprehended. We think it is a question of fact for a jury, as to whether the failure to remonstrate, under a particular set of circumstances, is negligence as a matter of fact. This is the doctrine taught in *Perry v. Pickwick Stages of Oregon,* 117 Or. 598 (243 P. 787), and *Bauer v. Tougaw,* 128 Wash. 654 (224 P. 20). While other states have held to a somewhat stricter rule, we think it best to follow the policy of our former decision.

The judgment will have to be affirmed.

Coshow, C. J., Rand and Rossman, JJ., concur.