Argued December 6, 1961, reargued February 7, affirmed
June 27, 1962

# RAZ *v.* MILLS

372 P. 2d 955

*Francis E. Marsh,* McMinnville, argued the cause for appellant. With him on the brief were Marsh, Marsh, Dashney & Cushing, McMinnville.

*H. H. Phillips,* Portland, argued the cause for respondent. With him on the brief were James K. Buell and Phillips, Coughlin, Buell & Phillips, Portland.

Before McAllister, Chief Justice, and Rossman, Warner, Perry, Sloan, O'Connell and Goodwin, Justices.

GOODWIN, J.

This is an action for damages suffered in a collision between two automobiles. The jury rendered a verdict for the plaintiff. The defendant appeals from the ensuing judgment.

The plaintiff, Eileen Raz, was riding as a passenger in an automobile being driven by her husband in a northeasterly direction on Highway 99-W. The defendant, Ruth Mills, was driving a pickup truck on said highway in a southwesterly direction. The complaint alleges that the defendant negligently caused

the pickup truck to collide with the Raz automobile, causing serious injuries to plaintiff. The specifications of negligence are as follows:

"1. In failing to keep her pickup truck under proper control.

"2. In failing to stop, turn or swerve to avoid colliding with the automobile in which plaintiff was a passenger.

"3. In failing to keep a proper lookout for the automobile in which plaintiff was a passenger.

"4. In operating her pickup truck at a speed that was greater than reasonable and prudent, having due regard to the traffic, the surface and width of the highway and other conditions then and there existing.

"5. In failing to drive her pickup truck on the right half of the highway when the left half of said highway was occupied by the automobile in which plaintiff was a passenger.

"6. In driving her pickup truck from the right half of the highway to the left half of said highway when such movement could not be made with safety."

Defendant, by her answer, denies that she was negligent.

Assignment of Error No. I asserts that the trial court erred in denying a motion for a directed verdict. The defendant contends that the plaintiff failed to prove any one of the above-quoted allegations of negligence. Assignment No. II again challenges the sufficiency of the evidence by asserting error in the denial of defendant's motion for judgment notwithstanding the verdict.

Assignments III, IV and V are all based on the contention that there was no evidence of unreasonable speed. In the respective assignments it is contended

that the issue of speed should have been withdrawn from the jury; that the court should have instructed the jury to disregard the allegations of the complaint concerning speed; and that the court should not have instructed the jury regarding the basic speed rule (ORS 483.102 (1)).

Assignments VI and VII are based on the contention that there is no evidence to support the allegations of negligence in failing to drive on the right half of the highway. Assignment VI complains of the failure to withdraw those allegations of the complaint, and Assignment VII complains of the giving of an instruction concerning the duty to drive on the right half of the highway pursuant to ORS 483.302 and 483.304.

Assignment VIII relates to a ruling which struck out certain testimony.

The issues thus presented require us to determine, first, whether there was any evidence of negligence on the part of the defendant, as alleged in the complaint. If there was substantial evidence of negligence in one or more of the particulars specified, then Assignments of Error I and II are without merit and the case was one for the jury.

Only four witnesses testified concerning the collision. They were the plaintiff, Eileen Raz, her husband, Henry Raz, a disinterested eyewitness, Robert Rummer, and the defendant, Ruth Mills. Mr. Rummer was following the Raz car.

Rain had been falling prior to the accident. The night was dark. The pavement was wet, and visibility was poor. Both cars were traveling with lights on low beam. To the witnesses, the pavement "looked shiny black." It was slippery. At the point of impact

the road was straight. The center line of the highway was marked with the usual painted line. The pavement was 20 feet wide. Both cars were in a zone where the indicated speed was 45 miles per hour. As they approached the scene of the collision, both cars were traveling "about 30 miles an hour."

The collision occurred opposite a restaurant known as "Mary's Garden", which was on the south side of the highway. On the north side of the highway there were a filling station and a tavern. The lights were on at all three places. Mr. Raz said his lights at low beam would "show up a hundred feet or so."

All witnesses agreed that just before the impact a pedestrian suddenly crossed the road in front of the Raz automobile in its lane, and then, without pausing, in front of the approaching Mills automobile in its lane. Simultaneously, of course, the two automobiles were closing upon one another at the rate of their combined speeds. There was a lack of precise agreement on the details of the pedestrian's excursion between the two approaching automobiles, but all agreed that he was dressed in dark clothing and that he was visible only a short time. The persons in the Raz automobile said they saw the pedestrian on their right shoulder of the road and observed his passage to the other shoulder. Mr. Rummer said the pedestrian darted across "like the dickens." Mrs. Mills said she saw him only during the fleeting instant before she depressed the brake pedal. She testified that when she first saw the pedestrian he was three feet from the center line in her lane of traffic and just in front of her left headlight. Mr. Raz testified that the pedestrian had cleared the roadway and was on the far side when Mr. Raz noticed the defendant's truck coming toward him. The collision occurred in the lane of traffic oc-

cupied by the Raz automobile. Defendant said she applied the brakes and her truck skidded across the center line.

■ It will be recalled that the first two assignments of error challenge the sufficiency of the evidence upon the question of negligence. Inasmuch as the collision occurred in the plaintiff's lane of travel, we hold that the matter of negligence was a jury question. It is not necessary to decide in this case whether the manner in which the collision occurred constitutes the kind of circumstantial evidence which might, in the so-called *res-ipsa-loquitur* cases, relieve the plaintiff of the burden of proving a specific act of negligence. See cases discussed in *Powell v. Moore,* 228 Or 255, 364 P2d 1094. Here we have a specific act of negligence alleged (failure to remain on the right side of the road) and the allegation is supported by enough evidence so that the jury could find that this act of negligence was the proximate cause of the collision. On this point, moreover, the evidence was virtually undisputed. Failure to remain on the right side of the road would be a violation of the statutory duty imposed by ORS 483.302 and 483.306. If unexplained, the facts would establish a *prima facie* case for the plaintiff. *Gum, Adm. v. Wooge et al,* 211 Or 149, 159, 315 P2d 119; *Wilson v. Bittner,* 129 Or 122, 276 P 268, 64 ALR 132. Cf. *Haltom v. Fellows,* 157 Or 514, 73 P2d 680 (1937), where this court disapproved an instruction which told the jury the burden would be upon the defendant to justify his being on the wrong side of the road. While the burden of proof of negligence ultimately lies with the plaintiff in such cases, *Gum, Adm. v. Wooge et al,* 211 Or, supra at 160, if the plaintiff is injured on the plaintiff's side of the road, that fact alone is *prima facie* evidence of negli-

gence upon the part of the defendant and, if unexplained, would be sufficient to support a verdict for the plaintiff. While *Haltom v. Fellows* recognized the truth of the foregoing proposition, it confused the defendant's burden of going forward with evidence to meet a *prima facie* case with the ultimate burden of proof which, of course, remains upon the plaintiff. As we said in *Gum, Adm. v. Wooge et al,* supra at 160:

> "After the defendant has produced rebutting testimony and rested his case it is, ordinarily, for the jury, in deciding whether the plaintiff has carried his burden of persuasion, to determine whether the prima facie case which the plaintiff established has been weakened or destroyed. It is, of course, manifest that the burden of persuasion on the issue of defendants' negligence rested throughout the case with the plaintiff. However, when the court was asked to direct a verdict for the defendants, it was required to determine whether the evidence produced by the defendants negated that which established the plaintiff's prima facie case so conclusively that no reasonable man could any longer be justified in engaging in the inferences which established the plaintiff's case."

The foregoing explanation of the trial court's duty upon a motion for a directed verdict applies equally to the facts of the case at bar. If reasonable minds could differ concerning the defendant's explanation of the accident, then the case was one for the jury.

■ In the plaintiff's case in chief, there was evidence that a pedestrian had crossed in front of the defendant's truck, but sufficiently in advance of the truck so that a jury might have concluded that the defendant would not have been faced with an emergency if she had been keeping a proper lookout. The defendant, on the other hand, testified that she was keeping a

lookout, but nevertheless discovered the pedestrian only when he was some twenty feet from her bumper. This evidence, of course, if believed by the jury, could support a finding that the defendant was faced with a sudden emergency. Thus, there was a jury question on the issue of the existence of an emergency. If the jury found that there was no emergency, evidence of the then unexplained violation of the defendant's statutory duty to remain on her own side of the road would certainly support a verdict for plaintiff.

The question of the emergency relied upon by the defendant naturally leads the inquiry into the matter of the defendant's fault or freedom from fault in creating the emergency.

■■■ A defendant relying upon an emergency to explain his conduct must show that he was faced with a sudden danger, in light of which his conduct measures up to the standard required of a reasonable man faced with a similar emergency. See Restatement, 2 Torts 796, § 296 (1934). However, as we have said in a number of cases, a person whose own negligence contributes to the emergency cannot take refuge in the emergency to escape liability for his own fault. See, e.g., *Cederoth v. Cowles et al,* 224 Or 403, 412, 356 P2d 542. Thus, if the emergency relied upon by defendant came about in part because of her own failure to see the pedestrian sooner, i.e., to maintain a proper lookout, the emergency would be no defense. Because a defendant need not specifically plead the existence of an emergency, *Tuite v. Union Pacific Stages et al,* 204 Or 565, 595, 284 P2d 333, a plaintiff who is met with evidence of an emergency has the right to show that the emergency was caused in part by the defendant's negligence, despite the fact that such negligence was not specifically alleged in the complaint. In the case at bar,

then, evidence tending to show that the defendant failed to observe the pedestrian was competent as soon as the defendant introduced the element of emergency. Thus, the sufficiency of the defendant's lookout became material in the jury's consideration of the emergency even though general lookout, as such, was not pleaded in the complaint. It will be recalled that the plaintiff had not charged the defendant with negligence in failing to keep a general lookout for other persons using the highway, but "In failing to keep a proper lookout for the automobile in which the plaintiff was a passenger." On this score, the evidence was uncontradicted that the defendant was watching the Raz automobile as it approached her. Thus, while the plaintiff had alleged in her complaint only a failure of a specific kind of lookout, she was entitled to the benefit of the defendant's evidence relevant to general lookout, i.e., the kind of general lookout the defendant would need to maintain in order to be free from fault with respect to the emergency. It was therefore proper to instruct upon general lookout. If the defendant's attention to her driving, i.e., general lookout, measured up to the standard of reasonable care so that she was not at fault in causing the emergency, then, if the jury should find that there was such an emergency, the defendant might be excused for her failure to remain on her own side of the road.

A driver must always maintain such lookout as a reasonably prudent person would maintain in the same or similar circumstances. *Britton v. Jackson et al*, 226 Or 136, 359 P2d 429; *Smith v. Portland Traction Co.*, 220 Or 215, 349 P2d 286; *Phillips, Gdn. v. Creighton, Adm.*, 211 Or 645, 316 P2d 302. At night there may be a question how long a reasonable driver would or could look into the glare of oncoming headlights

to detect pedestrians crossing, or poised on the left shoulder of the road preparatory to crossing. Cf. Annotation, 22 ALR2d 292, 381. However, the reasonableness of the defendant's lookout is a jury question.

■ If there was no negligence in the defendant's lookout, as a jury could have found, then there may be a serious question whether the defendant's speed can be said to be evidence of any conduct other than that of a reasonable person in the same circumstances. That question, however, was one for the jury. See *McReynolds v. Howland,* 218 Or 566, 346 P2d 127 (1959); *Nicholas v. Fennell,* 184 Or 541, 199 P2d 905 (1948).

■ In view of our decision that there was a jury question concerning the defendant's speed, lookout, and control, we will comment only briefly upon the remaining assignments of error. It will be recalled that two specifications of negligence in the complaint dealt with defendant's being in plaintiff's lane at the time of the accident. One charged the defendant with driving into the wrong lane. The implication is that she drove over the line voluntarily. There is no evidence to support such an inference, and the allegation should have been withdrawn. There was, however, no doubt that the defendant crashed into plaintiff on plaintiff's side of the highway. We fail to see how the jury could have been misled by the court's oversight in failing to strike the surplus allegation. Negligence in failing to remain on the right side of the road was properly presented to the jury upon instructions concerning the effect of any emergency. The jury could not have found that the defendant drove over the line intentionally, and there is no reason to suppose that it did so find.

Finally, the defendant assigns error to the action of the court in telling the jury to disregard certain questions and answers tending to show that at a former trial the plaintiff had admitted making exculpatory statements to the defendant. If the plaintiff told the defendant prior to the litigation, "I don't blame you for the accident," it would be for the jury to decide whether such a statement was inconsistent with the plaintiff's position at the time of trial. It was error to take the matter from the jury. Either party may, by proper cross-examination, develop prior inconsistent statements or admissions. *Oxley et al v. Linnton Plywood Ass'n*, 205 Or 78, 98, 284 P2d 766. Again, however, we can find no basis for saying the error was prejudicial. The trial court, in chambers, had properly warned both the plaintiff and defendant to be careful in connection with such out-of-court conversations, because there was a serious danger that one or more of the parties would blunder into the matter of insurance in a manner that would require the court to discharge the jury and begin over again. The testimony was proceeding into a dangerous area when the trial court told the jury to disregard it.

The real issue in the case was whether the defendant drove her truck in a negligent manner and whether such driving was the cause of the plaintiff's injuries. We are satisfied that the parties received a fair trial and that the errors noticed were not prejudicial.

Affirmed.

PERRY, J., dissenting.

I am unable to agree with the conclusions reached by the majority for several reasons.

First, there is no proof in this case of any negligence on the part of the defendant, as alleged in plaintiff's complaint, that could be the proximate cause of the collision of the motor vehicles involved.

Second, it was clearly error for the trial court to fail to withdraw the allegation of speed as negligence from the consideration of the jury, and third, that a proper consideration of the undisputed facts leaves only a legal question, and this court is being remiss in its duty to decide a case which resolves itself into an issue of law.

In general, the statement of facts set out in the majority opinion is correct, with the exception that there is no testimony that the highway was slippery. The facts should also be amplified to disclose that the accident occurred in a rural area where there are no crosswalks and the highway is not only straight, but is level for a considerable distance in both directions.

In considering whether or not liability rests upon the defendant, it appears to me that the majority have failed to recognize or give effect to a well-established rule of law, i.e., to create legal liability a plaintiff must plead and prove, not only the fact of negligence (the violation of a duty owed the injured party) but must also establish that this negligence was a proximate cause of the accident.

"To fix liability in an action of this nature two things must concur and combine: (1) an act of negligence on the part of defendant; and (2) such act of negligence must be a proximate cause of the injury. If either of these elements is missing, there can be no liability. * * *" *Lemons et al v. Holland et al,* 205 Or 163, 187, 284 P2d 1041, 286 P2d 656.

To justify the opinion, the majority, without analyzing the facts simply state: "Inasmuch as the collision occurred in the plaintiff's lane of travel, we hold that the matter of negligence was a jury question."

I agree with the general propositions of law set forth in the opinion, and as expressed in *Gum, Adm. v. Wooge et al,* 211 Or 149, 315 P2d 119, that when a collision of automobiles occurs in a lane of travel, a prima facie case is established against the operator of the vehicle in the wrong lane of travel. This not because of the doctrine of res ipsa loquitur, but because with no other facts, this circumstantial showing raises an inference that the offending driver violated his statutory duty to operate his vehicle upon his side of the roadway. The violation of this duty is negligence per se. But I fail to understand just how this rule of law creates a jury question in this case. The majority state: "The jury could not have found that the defendant drove over the line intentionally, * * *." Therefore there can be no inference of a voluntary or intentional act in defendant's crossing into plaintiff's lane of travel, as alleged in plaintiff's complaint. This inference of a voluntary or intentional act is absolutely necessary to plaintiff's right of recovery.

It is a well established rule of law that "when a fact otherwise presumable is negatived by proof, free from question and contradiction, no room remains for a favorable presumption, and neither court nor jury are at liberty to engage in one." *French v. State Industrial Accident Commission,* 156 Or 443, 455, 68 P2d 466. Cases sustaining this view are: *Stage v. St. Pierre,* 224 Or 395, 399, 356 P2d 432; *Wiebe v. Seely, Administrator,* 215 Or 331, 342, 335 P2d 379; *Summerville v. Gillespie,* 181 Or 144, 179 P2d 719; *Wyckoff v. Mutual Life Ins. Co.,* 173 Or 592, 596,

147 P2d 227; *Bunnell v. Parelius,* 166 Or 174, 179, 111 P2d 88.

In determining whether or not evidence is sufficient to rebut and destroy a prima facie case, we cited with approval in *Wiebe v. Seely, Administrator,* supra, (215 Or at 343) the rule set forth by the late Chief Justice Vanderbilt, as follows:

> " '* * * Where men of reason and fairness may entertain differing views as to the truth of testimony, whether it be uncontradicted, uncontroverted or even undisputed, evidence of such a character is for the jury. * * * [Citing cases]. *But when the testimony of witnesses, interested in the event or otherwise, is clear and convincing, not incredible in the light of general knowledge and common experience, not extraordinary, not contradicted in any way by witnesses or circumstances, and so plain and complete that disbelief of the story could not reasonably arise in the rational process of an ordinarily intelligent mind, then a question has been presented for the court to decide and not the jury.* * * * [Citing cases].' 62 ALR 1186-1187." *Ferdinand v. Agricultural Insurance Co.,* 22 NJ 482, 126 A2d 323, 62 ALR2d 1179. (Italics added).

With these rules in mind I will now discuss the question of whether the defendant drove her vehicle across the line into plaintiff's lane of travel or whether she applied her brakes and skidded into plaintiff's lane of travel. This even though the majority seem to admit that when defendant applied her brakes she skidded into the opposite lane. Her testimony is as follows:

> "THE WITNESS: * * * It was dark. It was getting dark as I left home, and by the time I got down there it was dark enough that everyone had their lights on, and I was meeting a string of cars

after I turned on to the Portland road, and I went aways and I was meeting a long string—quite a long string of cars, and I was watching down the road on my lane of traffic, and going along there about 30 miles an hour—that was the speed we were going. Nobody was traveling very fast that night—and, as I approached Mary's Gardens, suddenly, when my lights picked this man up—he stepped over into my lane and he was about 2 or 3 feet into my lane of traffic. I hadn't noticed him in front of the headlights that were coming, and I slammed on my brakes—that's all I knew to do—and the rear end of my pickup swerved sharply to the left and it headed me into the oncoming lane of traffic, and I ended up over on the—this other—partly on the other lane of traffic.

"Q Can you tell about how far you were from this man as he was crossing?

"A I believe it—it seemed to me that it was about 20 feet. Anyway, he was right there and I slammed on my brakes to avoid hitting him.

"Q Now, which way was he going?

"A He was walking from—I'll say from Mary's Garden almost directly—I'll say almost directly straight across the road to the service station across the road, and then he went on up.

"Q Do you remember the impact?
"A Yes.

"Q Now, where were the cars located when they came to rest or when the collision was over with? Where was your car sitting in the pavement?

"A My right fender was bumped into Mrs. Raz' car—Mrs. Raz' left fender of his Buick, and my front wheels were across the yellow line into his lane of traffic.

"Q Then where were the rear wheels of the pickup?

"A They were still on my side. I was turned sharply."

There is no testimony or evidence to contradict defendant's statement that she applied her brakes and the car headed into the plaintiff's lane of traffic. That this is what happened is confirmed by plaintiff's evidence. Mr. Raz, driver of the car in which plaintiff was riding, after testifying he had been driving about 30 miles per hour and had noticed the pedestrian starting across the highway in his lane of travel and thinking it was only necessary to take his foot off of the accelerator to decrease his speed so the pedestrian could clear his lane of travel, testified as follows:

"Q After you saw the lights of the pickup swinging toward you what happened? That you know of of your own knowledge?

"A I tried to jam my brakes. It was immediately in front of me and we collided.

"* * * * *

"Q Then what would you estimate the speed of your car to have been at the time the 2 vehicles came together?

"A I might have been doing about 20. I had slacked up and—if I hit the brake I didn't seem to noticeably slow down, although it was, I think with the brakes on at the very instant he hit. I might have had my wheels already locked.

"Q How did the cars come to a stop after the impact? By that, I mean, what was the relative position of them to each other?

"A I stopped approximately right in my traveling lane, and the pickup was at an angle to it, as though it was crossing the street diagonally, and was jammed up against my hood directly against the radiator. The front—the right front of the pickup was just inside of my left front wheel.

"* * * * *

"Q Do you know whether you slowed down at all?

"A My motion—my feeling was I slowed down in motion.

"Q Now, you indicate—by what you also testified to—at the time of the impact you were going about 20 miles an hour, is that true?

"A That is an estimate, yes.

"* * * * *

"Q I think you said a minute ago you stopped in your tracks.

"A I think so.

"Q And you weren't shoved sideways, were you?

"A Slightly; not noticeably. I might have moved my car about a foot.

"* * * * *

"Q Do you know if there were any?

"A I couldn't say whether any skid marks were left or not. I would expect there would be some marks, but I didn't look for them."

The evidence of the parties and photographs introduced disclose that the point of collision of the automobiles was near the left front wheel of the automobile in which plaintiff was riding and a little to the right of center of the front portion of the defendant's pickup truck.

As to the interval of time after the defendant's pickup truck left its own lane of travel and the collision of the vehicles, at approximately the point where the pedestrian crossed the lane, Mr. Raz testified, as above set out, the car of defendant was *immediately* in front of him and the cars collided.

Robert Rummer, a disinterested witness called by

plaintiff, who was traveling approximately 50 feet behind the automobile in which plaintiff was riding and hoping to pass, testified as follows:

"Q * * * then, would you tell the jury, please, Mr. Rummer, just what you saw with reference to the happening of the accident? The accident itself?

"A Well, one thing: The grey object that I seen was traveling like the very dickens when I seen it. It was running fast, and, what happened was that I seen this grey object through her lights and, then, there was just—that was it. It was just that quick (indicating)."

Now, all of the above uncontradicted evidence should convince all fair and reasonable minds that the defendant had applied her brakes at some time before the impact, and thus slowed her motor vehicle to a speed slower than the vehicle in which plaintiff was riding. Every reasonably intelligent mind knows that if the defendant drove her motor vehicle at approximately 30 miles per hour into the left front part of the other vehicle, which had slowed to 20 miles per hour, the cars would not have stopped almost on the spot as they did. The front of plaintiff's automobile would be driven a considerable distance to its right, from the center of its lane on the paved portion of the road, and the rear of defendant's truck would not have remained well over on her 10-foot side of the highway.

Certainly there is nothing extraordinary in a driver applying brakes when he believes he is confronting a danger. In fact such an act is almost a reflex action it is so normal in human experience.

Since all of the evidence discloses an application of the brakes, and a skidding of the defendant's vehicle, I am greatly surprised at the apparent view of

the majority, though not expressed, that any act of the defendant other than applying her brakes, or actions which lead to the application of the brakes, could be considered as a proximate cause of the collision.

Skidding is not in and of itself negligence. This is the universal rule in every jurisdiction in this country. This rule of law has been expressed as follows:

> "The driver of a car must exercise care commensurate with the conditions existing to keep it under control on a slippery street or road, so as not to cause injury to another vehicle or an occupant thereof by skidding into it, particularly where the car is being driven on a grade or curve, or at an intersection, or where it is proceeding at a considerable speed. While skidding is not in itself, and without more, evidence of negligence, skidding may be evidence of negligence if it appears that it was caused by a failure to take reasonable precaution to avoid it when the conditions at the time made such a result probable in the absence of such precaution. The mere fact, therefore, that an automobile skids does not of itself constitute evidence of negligence upon the driver's part so as to render the doctrine of res ipsa loquitur applicable. Skidding is not an occurrence of such uncommon or unusual character that, unexplained, it furnishes evidence of the driver's negligence. The question is one of the exercise of care; if the requisite degree of care is exercised, no liability results from the skidding. However, the fact that the skidding of an automobile, considered by itself as an isolated factor unrelated to surrounding circumstances, is not evidence of negligence, does not mean that skidding always constitutes a defense to other proven acts of negligence." 5A Am Jur 439, 440, § 341.

This is of course the established rule in this state.

In *Wilbur v. Home Lbr. & Coal Co. et al*, 131 Or 180, 282 P 236, the evidence disclosed that because of the melting of two inches of snow that had fallen upon the "blacktop" pavement, the road was slippery. The truck of the defendant, after overtaking and passing another vehicle, commenced to skid to its right side of the highway and then to the left side "in front of the oncoming car driven by plaintiff. The truck skidded for a distance of 100 feet before it struck plaintiff's car and then continued skidding for a distance of approximately 30 feet towards the right side of the pavement before it finally stopped in a ditch." This court recognized the rule that skidding in itself is not negligence but held there was evidence of excessive speed. The court said:

> "* * * It seems entirely reasonable, in the light of the facts in this case, that the jury might well have inferred, taking into consideration the *distance which the auto truck skidded,* its manner of impact, and its position after having struck the plaintiff, that the driver of the auto truck was driving at a dangerous and excessive rate of speed, in view of the condition of the highway, and that he failed to have the truck under control: Casto v. Hansen, 123 Or 20 (261 P. 428)." (Italics mine).

The facts in that case disclose excessive speed and lack of control. But as is shown by the evidence in the case at bar, hereinbefore set out, there is no evidence of excessive speed or lack of proper control. This feature of the majority opinion will be discussed later.

Again, in *Haltom v. Fellows*, 157 Or 514, 73 P2d 680, another skidding case, which the majority seem to dismiss with a wave of the hand, we find the court again recognizing the rule that evidence of skidding

alone is not negligence. Error was assigned in the giving of the following instruction:

> " 'Skidding is not in and of itself evidence of negligence. However, when a car skids on the left-hand side of the highway and invades that portion of the highway properly belonging to a motor vehicle approaching in the opposite direction, the burden is upon the driver upon the wrong side of the highway to justify his violation of the law of the road.' " 157 Or 514 at 532.

The court then stated:

> "The vice of the foregoing instruction lies in shifting the burden of proof to defendant, which, under the law is upon plaintiff, and in indicating that the skidding of an automobile on to the left-hand side of the road constitutes a violation of the law of the road.
>
> "There may be an inference of a violation of the law of the road where a car skids to the left side and collides with another automobile, *but it is an inference of fact* and not one of law." Ibid 532-3 (Italics added).

To the same effect, and quoting from *Haltom v. Fellows,* supra, with approval, is the case of *Cavett v. Pac. Greyhound Lines et al,* 178 Or 363, 167 P2d 941.

The fact of being upon the wrong side of the road is not necessarily negligent, as pointed out by Mr. Justice ROSSMAN in *Gum, Adm, v. Wooge et al,* supra, 211 Or 149 at 158, a case which discloses the jury could find the defendant intentionally operated his vehicle in the plaintiff's lane of travel.

> "The requirement of keeping to the right half is not absolute under all circumstances and does not contemplate undeviating compliance except when drivers meet and pass vehicles coming from the opposite direction. Austin v. Portland Traction

Co., 181 Or 470, 182 P2d 412. Furthermore, the statute is not considered violated in instances when the driver, acting as a reasonably prudent person, turns to the left to avoid a collision with an approaching vehicle traveling in its wrong lane. La Vigne v. Portland Traction Co., 179 Or 221, 170 P2d 709. * * *"

This case under all of the evidence falls within the rule of an unintentional occupation of the wrong side of the road by defendant, and I cannot believe even the majority will deny that fact.

There is a distinction of which the majority fail to take note, i.e., between unintentionally occupying the wrong side of the road and intentionally occupying that wrong side. As stated in 2 Blashfield, Cyclopedia of Automobile Law and Practice, Perm ed, § 920 at page 101:

"In determining whether or not a person was justified in turning out to the left, the usual rules applicable to acts in emergencies generally apply and, where the dangerous situation is brought on by defendant's negligence, plaintiff's conduct in turning to the left is not to be judged by the rules and measurements of a calm calculation, but must be judged by its reasonableness in the light of the circumstances as they appeared to him in the situation in which he found himself, * * *."

Intentional or voluntary occupation of the wrong lane of a highway under the circumstances in this case could only be excused by reason of an emergency. In unintentionally occupying the wrong side of the highway by a driven vehicle, the question is not whether there was or was not an emergency which excuses a violation of the statute, but whether the driver, by reason of prior negligence, arrived there.

"Ordinarily, one will not be held guilty of

negligence in failing to keep to the right of the highway, where that is impossible 'by reason of circumstances over which he has no control, and for which he is in no sense responsible. *For example, where defendant's automobile, through no fault of the driver, skidded on a slippery pavement and was thrown across the center line and collided with plaintiff's automobile,* or where defendant's vision was obscured by a cloud of dust, and where he thereupon applied his brake, unconsciously swerving to the left side of the road, the rule requiring him to keep to the right does not apply. However, skidding to the left side of the road will not excuse being there if the skidding is due to the negligent acts or omission of the motorist." 2 Blashfield, Cyclopedia of Law and Practice, Perm ed, § 916, page 87. (Italics added).

The voluntary act of driving upon the wrong side of the road is excusable only if an emergency arises and is a course a reasonable person would take under the circumstances. However, where the party is involuntarily carried by the vehicle to the wrong side of the road, the question is whether or not the prior actions of the driver were negligent. For example, if the steering apparatus should break and the driver collides with a vehicle in its proper lane of travel, the driver is not liable unless he knew or should have known his vehicle was out of repair. This is true in skidding cases. The inquiry is as to the prior actions of the driver of the vehicle.

"The principal inquiry in cases of skidding is as to the driver's conduct prior to such skidding. The speed of the automobile and the care in handling the automobile, particularly in the application of brakes, are factors to be considered in determining whether he exercised due care. When there is ice on a hard-surfaced highway, drivers are charged with the duty to take care and caution in

the operation of their vehicles proportionate to the known and obvious dangerous condition of the highway." 5A Am Jur 441, Automobiles and Highway Traffic, § 342.

This is the reasoning of this court in *Baty et al v. Macken et ux,* 206 Or 285, 292 P2d 489; and, *Wilbur v. Home Lbr. & Coal Co.; Haltom v. Fellows*; and *Cavett v. Pac. Greyhound Lines et all,* all supra, and distinguishes the court's pronouncements in *Gum, Adm. v. Wooge et al,* supra.

Although set out in the majority opinion, I will again set out the specifications of negligence alleged by plaintiff as being a proximate cause of the collision of the automobiles:

"1. In failing to keep her pickup truck under proper control.

"2. In failing to stop, turn or swerve to avoid colliding with the automobile in which plaintiff was a passenger.

"3. In failing to keep a proper lookout for the automobile in which plaintiff was a passenger.

"4. In operating her pickup truck at a speed that was greater than reasonable and prudent, having due regard to the traffic, the surface and width of the highway and other conditions then and there existing.

"5. In failing to drive her pickup truck on the right half of the highway when the left half of said highway was occupied by the automobile in which plaintiff was a passenger.

"6. In driving her pickup truck from the right half of the highway to the left half of said highway when such movement could not be made with safety."

It is of course hornbook law that a plaintiff cannot allege negligence in one particular and recover

on proof of another. *Knahtla v. O.S.L.R. Co.*, 21 Or 136, 142, 27 P 91.

As stated by Mr. Justice LUSK:

"It is, of course, elementary that no negligence other than that alleged in the complaint can constitute the basis for a recovery." *Hamilton v. Finch*, 166 Or 156, 172, 109 P2d 852, 111 P2d 81.

The first allegation is that of failure of control.

" 'A car is "under control" within the meaning of the law if it is moving at such a rate, and the driver has the mechanism and power under such control that it can be brought to a stop with a reasonable degree of celerity.' " 2 Berry, Automobiles (7th ed) 429, § 2.389, approved in *Spence, Adm'x v. Rasmussen et al*, 190 Or 662, 681, 226 P2d 819.

The only evidence in this case is that plaintiff was driving 30 miles per hour in a zone where the recommended speed was 45 miles per hour and she applied the mechanism to stop the forward motion of the vehicle just prior to skidding into plaintiff's lane of travel. There is not even an intimation that the defendant was weaving about on the highway prior to the accident, or that, had her brakes acted in the normal manner, she would not have stopped with a reasonable degree of celerity. To submit this issue of negligence simply permits speculation.

As to plaintiff's second allegation of negligence, no discussion is necessary. Under all of the facts in this case there was no opportunity for the defendant to carry out this volitional act.

As to plaintiff's third allegation, the only evidence in the case is that defendant was at all times aware of the approach of the vehicle in which plaintiff was riding. This is not disputed by the majority, but they

seem to argue that defendant was negligent in this particular, in not sooner observing the pedestrian crossing the highway. This, of course, has nothing to do with the failure to maintain a lookout for the vehicle in which the defendant was riding, but has application only to the question of negligence in being on the wrong side of the highway.

As to plaintiff's fourth allegation which is related to the speed of the automobile, the majority dismiss this assignment of error in cavalier fashion by simply stating "That question, however, was one for the jury." Let us see if it is.

To constitute negligence, there must be actions, either passive or active, which a reasonable person would recognize as involving danger. The American Law Institute, in its Restatement of Torts, Vol 2, § 284, page 744, states the rule thusly:

> "Negligent conduct may be either:
>
> (a) an act which the actor as a reasonable man should realize as involving an unreasonable risk of causing an invasion of an interest of another, or
>
> (b) a failure to do an act which is necessary for the protection or assistance of another and which the actor is under a duty to do."

Their comment is as follows:

> "The actor, as a reasonable man, should realize that his act involves an unreasonable risk of causing an invasion of an interest of another, if a reasonable man knowing so much of the circumstances surrounding the actor at the time of his act as the actor knows or should know, would realize the existence of the risk and its unreasonable character. * * *" Id at 745.

This court has adopted and expressed this same rule of law, as follows:

> "But 'there is no duty to guard when there is no danger reasonably to be apprehended.' Shearman and Redfield on Negligence, op.cit., p 52
>
> " 'Foresight, not retrospect, is the standard of diligence. It is nearly always easy, after an accident has happened, to see how it could have been avoided. But negligence is not a matter to be judged after the occurrence. It is always a question of what reasonably prudent men under the same circumstances would or should, in the exercise of reasonable care, have anticipated.' Id., p. 50. And 'Ordinary care of a reasonably prudent man does not demand that a person should prevision or anticipate an unusual, improbable or extraordinary occurrence, though such happening is within the range of possibilities.' Burnside v. Gulf Refining Co., 166 Miss 460, 470, 148 So 219." *Herring v. Springbrook Packing Co.*, 208 Or 191 at 200, 299 P2d 604, 300 P2d 473.

The facts in this case disclose that the defendant was not following a motor vehicle ahead that could in any way interfere with her progress of travel; that she was meeting oncoming traffic traveling at the same approximate speed in their own lane of travel; that she was in a recommended zone of 45 miles per hour; that it was night and was misting or raining; that the roadway "looked shiny black." There is no evidence that the road was any more slippery than any other paved roadway with water upon it.

Now, how can it be said that a reasonable person would anticipate or foresee that a speed of 30 miles per hour under these circumstances would cause him to invade the lane of traffic coming from the other direction will forever remain a mystery to me, and I think also to the majority of people residing in west-

ern Oregon where they are required to drive on wet pavement the major portion of the year. I think it is common knowledge that driving upon wet pavement at 30 miles per hour will not cause an automobile to skid or slide from side to side. Water upon the blacktop does not have the same effect as does ice. But I think that in this case that is immaterial, for there is not the slightest evidence that the roadway was slippery, so that a person driving thereon at 30 miles per hour would anticipate a motor vehicle would skid thereon.

> "It is well established that the causal connection between defendant's act or omission and the injury must not be left to surmise or conjecture. The evidence must be something more substantial than merely indicating a possibility that the alleged negligence of the defendant was the proximate cause of the injury. When the evidence shows two or more equally probable causes of injury, for not all of which the defendant is responsible, no action for negligence can be maintained. In other words, negligence cannot be based on conjecture or speculation. It must be fairly and reasonably inferable from the evidence: 20 American Jurisprudence, § 1178; 45 C.J. 1269; Thompson on Negligence, § 7863; Vale v. State Industrial Accident Commission, 160 Or. 569, 86 P.(2d) 956; Abbott v. Portland Trust & Savings Bank, 160 Or. 699, 86 P.(2d) 962." *Simpson v. Hillman,* 163 Or 357, 364, 97 P2d 527.

Neither could speed be considered a proximate cause of the accident. Speed could only be considered the proximate cause of the accident if it was a primary or efficient cause of the defendant's vehicle leaving its lane of traffic.

It must be kept in mind that these vehicles were each, just prior to the collision, being driven in their

respective lanes of travel, and would so pass, unless something occurred which would change the direct course of one of the vehicles.

As the late Mr. Justice BELT observed in a case where automobiles were approaching each other and a collision occurred in plaintiff's lane of travel, "Obviously, if defendant had been driving on his right side of the highway, there could have been no collision unless plaintiff drove over onto his wrong side. Under such circumstances, the speed at which the defendant was traveling was immaterial and could not possibly have been the proximate cause of the accident." *Erdman v. Inman,* 165 Or at 591, 109 P2d 593. This clearly points out that there must be an occurrence which is a negligent act and which act is the proximate cause of defendant's invasion of plaintiff's lane of travel. The only evidence in the present case is that the occurrence was due to defendant's application of the brakes. Although, as the majority apparently do, one might speculate that defendant intentionally turned her vehicle to the left, but speculation is not evidence, as has been noted by this court so many times. Citations of authority are unnecessary.

From what has already been stated, the only way in which speed of 30 miles per hour under all of the circumstances then and there existing could be considered as negligent is that a reasonably prudent person would anticipate that he might be required to make a sudden stop instead of proceeding in a normal manner.

As previously pointed out, the area through which the vehicles were preceeding was rural. There was no crosswalk for pedestrians, and no traffic signals. While it is true, there was a filling station and tavern

on one side of the highway, and a restaurant on the other, so that a reasonable person could anticipate persons might cross the highway from one side to the other, the law is quite specific as to pedestrians under such circumstances. ORS 483.210(4) provides:

"Every pedestrian crossing a roadway at any place other than within a marked or unmarked crosswalk shall yield the right of way to vehicles upon the roadway. * * *"

Now, right of way has been defined on numerous occasions by this court, usually in connection with vehicles approaching intersecting highways. But whether referring to motor vehicles approaching intersecting highways or the rights of pedestrians crossing highways and motor vehicles operating thereon, the rule is the same. The party not having the right of way may not proceed if there is danger of interference or collision with the party having such right.

" 'If a traveler, not having such right of precedence, comes to the crossing and finds no one approaching it upon the other street within such distance as reasonably to indicate danger of interference or collision, he is under no obligation to stop or to wait, but may proceed to use such crossing as a matter of right.' " *Casto v. Hansen et al*, 123 Or 20, 27, 261 P 428.

Or, as expressed in an instruction approved by this court in *Ramsdell v. Frederick et al*, 132 Or 161 at 174, 285 P 219:

" 'With respect to the rule as to the right-of-way, you are instructed that the right of precedence at an intersection of two highways given by law has no proper application except where the travelers or vehicles on the intersecting highways approach the crossing so nearly at the same time and at such rates of speed that if both pro-

ceed, each without regard to the other, a collision or interference between them is to be reasonably apprehended. In such case it is the right of the one having the precedence to continue his course, and it is the duty of the other to yield to him the right of way. * * *' "

A person who violates the statutory right-of-way requirement is guilty of negligence per se. *Holmes v. Goble,* 132 Or 540, 285 P 822. Therefore, the majority, in holding that 30 miles per hour could be considered as negligent under the circumstances in this case, must be holding that a reasonable prudent person, in driving at such a speed, must anticipate that he will be required to apply his brakes and this may cause the vehicle to skid.

Now, as I have pointed out, there are no circumstances attendant which would indicate to any fairminded person that the speed or the course of the defendant's automobile would have been altered except for a pedestrian crossing the roadway.

The defendant of course was not relieved of the duty to exercise due care to avoid injury to the careless pedestrian. ORS 483.210(4), (5); *Barnes v. Winkler,* 216 Or 130, 133, 337 P2d 816. Indeed, it may truthfully be said that it was the defendant's exercise of care in the emergency created by the pedestrian's sudden appearance in the path of her vehicle which led to the accident. But this does not mean that the defendant was required to anticipate that the pedestrian would violate the right-of-way rule, nor that the defendant was negligent in failing to see the pedestrian before he came into her headlights. As I have already pointed out, no such negligence is charged and the court should not try to make a better case for

the plaintiff than she has made for herself in her complaint.

Since it is hornbook law that one who is not negligent need not anticipate the negligence of another, no question of fact as to lookout is raised, as I do not believe even the majority would be so bold as to state there could be a question of fact as to whether the pedestrian did nor did not violate the statute as to right of way.

As previously stated, even the driver of the vehicle in which plaintiff was riding felt it was necessary to reduce the speed of his automobile for the pedestrian to clear his lane of traffic.

This court is not only unrealistic, but overturning the whole field of automobile tort law in holding that speed could be considered as a negligent act in this case.

The majority, in arguing whether or not reasonable minds could reach different conclusions on the defendant being at some fault in creating the emergency, state:

"* * * Thus, if the emergency relied upon by defendant came about in part because of her own failure to see the pedestrian sooner, i.e., to maintain a proper lookout, the emergency would be no defense. * * * the sufficiency of the defendant's lookout became material in the jury's consideration of the emergency even though general lookout, as such, was not pleaded in the complaint. * * *"

To sustain such an assertion, the majority must be of the opinion that to maintain a proper lookout the law requires a lookout for persons who may violate the law. This, of course, runs contra to all the law

on the subject in every jurisdiction. No rule of law requires the anticipation of another's negligent conduct, except in cases not relevant, that is, in those cases where a party has been negligent and it is reasonable to assume that another may negligently set in motion this prior negligence. See *Arneil v. Schnitzer et al,* 173 Or 179, 144 P2d 707.

As previously stated, when a person discovers the negligence of another, he must use reasonable precaution not to injure the negligent person. That is exactly what occurred in this case insofar as the pedestrian was concerned. But the great fallacy of the argument lies in the apparent view of the majority that if defendant failed to maintain a proper lookout for the pedestrian and thus contributed to the emergency, this in and of itself would give rise to defendant's liability.

I had always thought, and I am sure the profession was of the opinion, that the emergency doctrine was but an extension of the measuring stick by which a jury is instructed as to what a reasonably prudent person would or would not do under the circumstances then and there existing, and, if an emergency exists, the reasonably prudent man, in choosing a course of action where more than one is open, is not to be held to as high a degree of care to avoid injuring another as he would be if there was time for reflection.

The emergency doctrine applies to determining whether a party, having a choice of action in proceeding as he did, exercised the care a reasonably prudent person would have exercised to avoid injuring another under the stress of the emergency. As stated by Mr. Justice Rossman:

"A driver who is confronted with an emergency

not of his own making, and who is required to act instantly or instinctively is not expected to display the same judgment and selection between alternative courses of escape as is expected when time is available for deliberation: Frangos v. Edmunds, 179 Or. 577, 173 P.2d 596; and Goebel v. Vaught, 126 Or. 332, 269 P. 491. Nevertheless, even though a motorist acts in an emergency, he does not find himself in a legal vacuum free from legal rules and standards. The law's omnipresent standard of a reasonably prudent person governs his action. If, in the emergency, he does what a reasonably prudent person presumably would have done, he is not liable for the consequences even though circumspection, had time for it been available, would have avoided a mishap: * * *." *Nicholas v. Fennell,* 184 Or 541, 551, 199 P2d 905.

And as stated by Mr. Justice BRAND:

"* * * The rule of reasonable care under all of the circumstances applies even in emergencies, the emergency being one of the circumstances to be considered. Kiddle v. Schnitzer, 167 Or. 316, 114 P.(2d) 109, 117 P.(2d) 983; Noble v. Sears, 122 Or. 162, 257 P. 809.

"The general rule is amplified rather than contradicted by the so-called emergency doctrine. When a driver finds himself confronted by an emergency constituting an imminent and impending danger and alternative means of escape from collision are presented so that it becomes a matter of judgment as to what course to follow, he will not be liable for a mistake in judgment if he acted with such care and prudence as a reasonable person would exercise in such an emergency. This is true even though the choice he makes is not such as a reasonable person with ample opportunity for deliberation would make. * * *" *Frangos v. Edmunds,* 179 Or 577, 607, 173 P2d 596.

Corpus Juris Secundum states the rule, as follows:

"Where the operator of a motor vehicle is by a sudden emergency, not caused in whole or in part by him, placed in a position of imminent peril to himself or to another, without sufficient time in which to determine with certainty the best course to pursue, he is not held to the same coolness, accuracy of judgment, or degree of care as is required of him under ordinary circumstances, or of one having ample opportunity for the full exercise of judgment, and is not liable for injuries caused by his vehicle if an accident occurs, provided he exercises ordinary or reasonable care or prudence, considering the stress of the circumstances, to avoid an accident, * * *." 60 CJS 624, 625, Motor Vehicles, § 257.

See, also, Annotation "Emergency Rule", 111 ALR 1019.

In other words, if it is alleged and there is proof that a defendant's action was the proximate cause of an accident, and it occurs by reason of an emergency not of his own creation, and he takes one of the courses open to him, although not on reflection the best course, he is entitled to be judged by the triers of fact, not by what he did, but by what a reasonable prudent person would have done under the stress of emergency. On the other hand, if a jury could reasonably find he contributed to the emergency, or no emergency existed, his alleged negligence is to be judged, not in the light of an emergency, but as though no emergency existed. This is the extent of the emergency doctrine.

Under the plaintiff's allegations of negligence, the emergency doctrine would have value only if there was substantial evidence that defendant, as a choice in an emergency, intentionally turned her vehicle into the plaintiff's lane. There is, of course, as I have

demonstrated and as inferentially admitted by the majority, no evidence of this.

Aside from the rule of law that would place in question the fact as to when the defendant should know, as a reasonable prudent person, that the pedestrian was not going to yield the right of way to defendant in her lane of travel, it is clear that since the plaintiff's driver thought at that time it was necessary to slow his car by removing his foot from the accelerator, more action would be required of the defendant, since the pedestrian must, after crossing plaintiff's lane of travel, still cross the defendant's lane to reach a place of safety. In other words, a situation had already been created which would require the defendant, then traveling at the approximate speed of 30 miles per hour, to apply her brakes to avoid striking the pedestrian, under the uncontradicted evidence in this case.

Since the situation from the beginning required defendant to apply her brakes to avoid the pedestrian, it would be pure speculation to say that had she applied them easier or just tapped them, her vehicle would not have skidded into plaintiff's lane of travel. No juror and no member of this court could, from his past experience with driving vehicles, know the proclivities of the defendant's vehicle. There is no evidence in this case to support plaintiff's allegations that defendant drove her vehicle into plaintiff's lane of travel. Therefore these allegations fail when the evidence clearly discloses that defendant was carried there unintentionally and involuntarily by reason of defective brakes. Since there is not the slightest bit of substantial evidence that prior to the application of the brakes the defendant was driving in a negligent

manner, no question of fact remained for the jury's determination.

It is my view that the opinion of the majority discloses that either the court is remiss in fulfilling the duties enjoined upon it, or is willing, without lawful right, to abdicate its duty to the whims and prejudices of a jury. This court has always required that jurors, as fair-minded persons, be instructed in cases such as this, that they must judge actions by what a reasonable prudent person would do under the same or similar circumstances. This same duty rests upon this court, and the facts judged in that light.

ORS 18.240 reads:

"A cause not sufficient to be submitted to the jury is one which, if the jury were to find a verdict for the plaintiff, upon any or all of the issues to be tried, the court ought, if required, to set aside for want of evidence to support it."

This is a duty enjoined upon this court to the same extent as upon trial courts. We should not ignore this statute when it is applicable, as in this case.

Prosser, in his Law of Torts (2d ed) chapter 7, page 194, states this duty, as follows:

"While the function of the court, then, is primarily to determine the law, it must also decide some questions of fact, as to whether the evidence makes an issue sufficient for the jury; and the function of the jury in fixing the standard of reasonable conduct is so closely related to law that it amounts to a mere filling in of the details of the legal standard.

"Courts seldom divide the issue of negligence into such separate questions. The most common statement is that if men of reasonable intelligence may differ as to the conclusion to be drawn, the

issue must be left to the jury, otherwise it is for the court."

It was clearly error for the trial court to submit the issue of speed to the jury, and the cause should at least be reversed. In my opinion, fair-minded men of reasonable intelligence can reach no other conclusion under the admitted facts in this case as applicable to the established law in this state, than there was a total failure to prove any act of negligence on the part of the defendant as alleged in plaintiff's complaint. I would, therefore, reverse the judgment, with instructions to enter judgment for the defendant non obstante veredicto.